WHITFIELD v. ÆTNA LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1906.)

No. 2,013.

INSURANCE—INSURANCE ON LIFE—SUICIDE STATUTE OF MISSOURI—CONSTRUCTION.

Section 7896, Rev. St. Mo. 1899, which provides: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void," being in derogation of the common law, in restraint of the freedom of contract and subversive of sound morality, should receive a restrictive rather than an expansive construction and when so construed it prevents the suicide of an insured, whether sane or insane, from avoiding his insurance, either by operation of law or by stipulation of the parties, unless the act was contemplated by him at the time of making application for the policy, but it does not take from the parties the right to contract respecting the classification of risks and the amount of insurance which shall be provided for each, so long as they do not substantially eliminate suicide from the risks covered by any policy to which the statute is applicable.

[Ed. Note.—Suicide as a defense to action on life policy, see notes to Ætna Life Ins. Co. v. Florida, 16 C. C. A. 623; Fidelity and Casualty Co. v. Egbert, 28 C. C. A. 284.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

On the 3d day of November, 1900, the Ætna Life Insurance Company, a corporation created under the laws of Connecticut and doing business in the state of Missouri, issued in the latter state to James Whitfield, a citizen of that state, a policy of accident insurance, the material portions of which are as follows:

"Twentieth Century Combination.

Principal Sum, $5,000.00.      Accident Policy.      Premium, $6.25.

"The Ætna Life Insurance Company, of Hartford, Conn., in consideration of the warranties made in the application for this insurance and of the sum of six 25-100 dollars, does hereby insure James Whitfield, of the town of Kansas City, County of Jackson, State of Missouri, under classification Preferred, being a sporting editor K. C. Star by occupation, for the term of 3 months from the 29th day of Nov., 1900 (commencing and ending at twelve o'clock, noon, standard time) in the sum of twenty-five no-100 dollars per week indemnity against loss of time resulting from bodily injuries effected, during the term of this insurance, through external, violent, and accidental means, which shall independently of all other causes, immediately, continu-

ously and wholly disable him from prosecuting any and every kind of business pertaining to his occupation, above stated; or if such injuries shall not wholly disable the insured, as above, but shall immediately, continuously, and wholly disable him from the performance of one or more important daily duties pertaining to his occupation, or if, followed by a period of total disability resulting from such injuries, he shall be in like manner partially disabled, the company will pay two-fifths of the weekly indemnity herein provided for total disability for the period of such partial disability, but not for more than twenty-six consecutive weeks of partial disability, nor will payments be made for total disability or total and partial disability combined exceeding in amount the principal sum insured by this policy as stated in clause E. * * *

"(a) If such injuries alone result within ninety days in loss by removal of both hands at or above the wrists, or both feet at or above the ankles, or one hand and one foot at those places, or the irrecoverable loss of the entire sight of both eyes, then the insured shall be paid the full principal sum insured in lieu of weekly indemnity as herein provided, and this policy shall thereupon cease and be surrendered to the company.

"(b) If such injuries alone result within ninety days in loss by removal of right hand at or above the wrist, or either leg at or above the knee the insured shall be paid one-half the principal sum insured in lieu of weekly indemnity as herein provided, and this policy shall cease and be surrendered to the company.

"(c) If such injuries alone result within ninety days in loss by removal of the left hand at or above the wrist, or either foot at or above the ankle, the insured shall be paid one-fifth the principal sum insured in lieu of weekly indemnity as herein provided, and this policy shall cease and be surrendered to the company.

"(d) If such injuries alone result within ninety days in the irrecoverable loss of the entire sight of one eye, the insured shall be paid one-eighth the principal sum insured in lieu of weekly indemnity as herein provided.

"(e) If death results solely from such injuries within ninety days, the said company will pay the principal sum of five thousand no-100 dollars to Amanda M. S. Whitfield, his wife, if living; and in the event of the death of the said beneficiary before the death of the insured, to the executors, administrators, or assigns of the insured.

"(f) If injuries are sustained by means as aforesaid. (1) while the insured is riding as a passenger in or on any public passenger conveyance, using steam, compressed air, gasoline, cable or electricity as a motive power, or (2) while riding in a regular passenger elevator, or (3) while riding a bicycle (not in a race for prize or purse, concerning which risk, see condition two), or (4) in consequence of the burning of a building in which the insured shall be at the commencement of the fire, the amount to be paid shall be double the sum specified in the clause under which claim is made, subject to all the conditions of this policy.

"This policy is issued and accepted subject to the following conditions: * * *

"(2) If the insured is * * * accidentally injured while riding a bicycle in a race for a prize or purse, the amount payable will be one-third of the double benefits provided by clause 'f' hereof.

"(3) * * * Clause 'f' above shall not apply to accidents happening while the insured is boarding or alighting from a street car.

"(4) In the event of death, loss of limb or sight, or disability due to sunstroke or freezing; or due to unnecessary exposure to obvious risk of injury or obvious danger; or due to contact with poisonous substances other than to the septic poisoning of wounds accidentally inflicted; or due to hernia, the result of an accident happening subsequent to the issue of this policy; or in event of death following bodily injuries of which there existed no external or visible mark upon the body of contusion or wound sufficient to cause death (accidental drowning only excepted) and an autopsy showed that such injuries contributed materially to the death of insured, then in all such cases referred to in this paragraph, the limit of this Company's liability shall be

one-fifth the amount otherwise payable under this policy, anything to the contrary in this policy notwithstanding.

"(5) In the event of death, loss of limb or sight, or disability due to injuries intentionally inflicted upon the insured by any other person (except assaults committed for the sole purpose of burglary or robbery), whether such other person be sane or insane, or under the influence of intoxicants or not; or due to injuries received while fighting or in a riot; or due to injuries intentionally inflicted upon the insured by himself; or due to suicide, sane or insane; or due to the taking of poison, voluntarily or involuntarily, or the inhaling of any gas or vapor; or due to injuries received while under the influence of intoxicants or narcotics, then in all such cases referred to in this paragraph, the limit of the company's liability shall be one-tenth the amount otherwise payable under this policy, anything to the contrary in this policy notwithstanding."

By the regular payment of quarterly premiums in advance the policy was continued in force until and including the 7th day of April, 1902, when the insured died from bodily injuries caused by a pistol shot intentionally fired by himself for the purpose of thereby taking his own life, the death being due to suicide. Amanda M. S. Whitfield, the beneficiary in the event of death, gave due notice and made due proofs of the death, and demanded payment of the policy. The company tendered to her $500 as the amount stipulated to be paid in the event of death by suicide, but she refused to accept that sum and brought an action upon the policy. The trial was to the court, under a written stipulation waiving a jury, and resulted in a special finding of the facts here stated, upon which judgment was given for the plaintiff in the sum of $500. 125 Fed. 269. She sought to recover $5,000, and in furtherance of that claim prosecutes this writ of error.

Frank Hagerman, for plaintiff in error.

James C. Jones (Lon O. Hocker, L. C. Boyle, W. F. Guthrie, L. F. Davison, and C. G. B. Drummond, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The only question arising upon this record is, whether the court failed to give proper effect to the statute of Missouri which provides:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.". Rev. St. 1899, § 7896.

As the policy was issued and delivered in Missouri to one of her citizens by a company doing business in that state, there can be no question, but that effect must be given to the statute, if it is applicable to a policy, like the one here sued upon, which insures against death resulting solely from injuries effected through external, violent, and accidental means; and that it is appliable to such a policy is determined in Logan v. Fidelity and Casualty Co., 146 Mo. 114, 47 S. W. 948. But that our reference to that cause may not be misunderstood, it may be properly observed that we do not understand it as holding that, by reason of the statute, every policy of insurance on life, issued by a company doing business in Missouri to a citizen of that state, covers death by suicide irrespective of the scope or character of the

policy. To illustrate, we do not understand it as holding that the effect of the statute is that an insurance against death resulting from a particular disease or from the hazards of a particular employment or mode of travel is also an insurance against death by suicide. Rightly considered, the holding in this respect is nothing more than that the statute is applicable to insurance against loss of life by external, violent, and accidental means, because this, as was held in Accident Ins. Co. v. Crandal, 120 U. S. 527, 533, 534, 7 Sup. Ct. 685, 30 L. Ed. 740, includes suicide by one who is insane. That this is so is shown, as we think, by the court's statement (page 120 of 146 Mo., and page 949 of 47 S. W.) of the sole question presented for decision, viz.:

"Is suicide in this state a valid defense to an action upon a policy of insurance issued by an accident insurance company, containing provisions such as the one in controversy, where it is not shown that the insured contemplated suicide at the time he made his application for the policy (and it being admitted that the assured afterwards came to his death from external, violent and accidental means)?"

And by that portion of the opinion (page 123 of 146 Mo., and page 950 of 47 S. W.) in which it is said:

"When a policy covers loss of life from external, violent, and accidental means alone, why is it not insurance on life? Such a provision incorporated in a general life insurance policy admittedly would be insurance on life, then why less insurance on life because not coupled with provisions covering loss of life from unusual or natural causes as well? If one holds a general life policy and an accident policy, and is killed by lightning or commits suicide, so that he may be said to have died by accidental means, both the companies should pay, and the stipulation against liability in the event of suicide in the policies should be no more a defense against the suit upon the accident policy, providing against death from accidental cause, than against the policy which goes further and covers death from other causes as well."

But the question arising upon this record is not solved by ascertaining that the statute is applicable to the policy sued upon. It must also be ascertained whether, apart from the qualifying clause, the effect of the statute is to prevent the suicide of an insured from operating as an avoidance of his insurance, either by operation of law or by reason of some stipulation in the policy; or whether it goes further and prevents all discrimination against suicide as a risk. If the latter be the correct view, as is asserted by the plaintiff, it follows logically that in a policy where the risks are classified and a distinct amount of insurance is provided for each class, suicide must be included among the risks for which the highest amount of insurance is provided, although the insured may not care to pay the cost of providing so much insurance for that risk or may deem it prudent to provide a larger amount of insurance for others. Either this is so or the parties are left free to contract respecting the classification of the risks and the amount of insurance which shall be provided for each, so long as they do not indirectly but substantially make suicide a defense to an action upon the policy.

We think there are insuperable objections to the plaintiff's contention. The statute abrogates a common law defense and puts a restraint upon the freedom of contract. This alone indicates that it should receive a restrictive rather than an expansive construction. Brown v.

Barry, 3 Dall. 365, 367, 1 L. Ed. 638; McCool v. Smith, 1 Black 459, 470, 17 L. Ed. 218; Shaw v. Railroad Co., 101 U. S. 557, 565, 25 L. Ed. 892; Baltimore, etc., Ry. Co. v. Voight, 176 U. S. 498, 505, 20 Sup. Ct. 385, 44 L. Ed. 560; Prescott, etc., Co. v. Atchison, etc., Co. (C. C.) 73 Fed. 438; Barry v. Snowden (C. C.) 106 Fed. 571; Smith v. Spooner, 3 Pick. (Mass.) 229. But the occasion for avoiding an expansive construction is more apparent when it is considered that the statute makes the willful self-destruction of the insured whilst sane an insurable risk, and that the restraint which it puts upon the right of the parties to contract according to their own judgment applies to that risk as well as to the risk of the insured dying by his own hand whilst insane. Knights Templar, etc., Co. v. Jarman, 44 C. C. A. 93, 104 Fed. 638; s. c., 187 U. S. 197, 23 Sup. Ct. 108, 47 L. Ed. 139. Of insurance against the insured's suicide whilst sane, it is said in Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 154, 18 Sup. Ct. 300, 42 L. Ed. 693, in connection with an extended consideration of the authorities:

"When the policy is silent as to suicide, it is to be taken that the subject of the insurance; that is, the life of the assured, shall not be intentionally and directly, with whatever motive, destroyed by him when in sound mind. To hold otherwise is to say that the occurrence of the event upon the happening of which the company undertook to pay, was intended to be left to his option. That view is against the very essence of the contract. There is another consideration supporting the contention that death intentionally caused by the act of the assured when in sound mind—the policy being silent as to suicide—is not to be deemed to have been within the contemplation of the parties; that is, that a different view would attribute to them a purpose to make a contract that could not be enforced without injury to the public. A contract, the tendency of which is to endanger the public interests or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment. If, therefore, a policy—taken out by the person whose life is insured, and in which the sum named is made payable to himself, his executors, administrators or assigns—expressly provided for the payment of the sum stipulated when or if the assured, in sound mind, took his own life, the contract, even if not prohibited by statute, would be held to be against public policy, in that it tempted or encouraged the assured to commit suicide in order to make provision for those dependent upon him, or to whom he was indebted."

It hardly needs statement that a thing which is inherently subversive of sound morality is none the less so because sanctioned by statute, and yet if the statute violates no constitutional provision or principle effect must be given to it and the responsibility for its enactment and consequences must rest with the Legislature. Courts, however, always avoid a construction which will render a statute subversive of sound morality, unjust, or absurd, if a more sensible construction can be given to it; and, if its terms be such that it must unavoidably lead to evil, unjust, or absurd consequences, the courts give to it such effect only as is necessarily required by the clear import of its language. This is not rejecting or revising the action of the Legislature, but effectuating what is reasonably and conclusively presumed to be its real intent. United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278; Holy Trinity Church v. United States, 143 U. S. 457, 459, 461, 12 Sup. Ct. 511, 36 L. Ed. 226; Lau Ow Bew v. United States, 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340; In re Chapman, 166 U. S. 661, 667, 17 Sup. Ct. 677, 41 L. Ed. 1154; Knowlton v. Moore, 178 U. S.

41, 77, 20 Sup. Ct. 747, 44 L. Ed. 969; Knights Templar, etc., Co. v. Jarman, 187 U. S. 197, 201, 23 Sup. Ct. 108, 47 L. Ed. 139; St. Louis, etc., Co. v. Evans, etc., Co., 85 Mo. 307, 329; State v. Chyo Chaigk, 92 Mo. 395, 408, 4 S. W. 704; Verdin v. City of St. Louis, 131 Mo. 26, 163, 33 S. W. 480, 36 S. W. 52. And so it is to effectuate the true legislative intent that a statute in derogation of the common law or in restraint of the freedom of contract is held to make no change in the law which it does not fairly express.

Applying these rules of interpretation to the present statute, we think that while it prevents the suicide of an insured, whether sane or insane, from avoiding his insurance, either by operation of law or by stipulation of the parties, unless the act was contemplated by him at the time of making application for the policy, it leaves the parties free to contract respecting the classification of the risks and the amount of insurance which shall be provided for each, so long as they do not by that means indirectly but substantially make suicide a defense to an action upon the policy.

The contention to the contrary is rested upon the declaration that "it shall be no defense that the insured committed suicide," and is, that when a policy insures against death by one or more means in a specified amount and against death by suicide in a lesser amount, suicide is thereby made a partial defense to an action on the policy. We cannot assent to this view. To do so is to discard the rational and established rules of interpretation before stated. The statute does not say that the amount of insurance provided for in the event of death by suicide shall not be less than is provided for when death results in some other way, nor that there shall be no discrimination of any kind against suicide as a risk. Nor is it an apt or natural way of expressing that thought to declare that it shall be no defense that the insured committed suicide, and that any stipulation to the contrary shall be void. In the absence of the statute an insured's suicide whilst sane avoids his insurance, not partially but completely, and, under the qualifying clause of the statute, that is still the effect of such self-destruction, if it was contemplated by the insured at the time he made application for the policy. Thus the defense which the statute is primarily designed to abrogate, as also the one which it still sanctions, is a complete and not a partial one. Moreover, we think it is altogether a mistaken use of the word defense to say that a policy which provides for insurance against death by one or more means in a specified amount and against death by another means in a lesser amount, makes death by the latter means a defense, partial or otherwise, to an action on the policy. On the contrary, such a policy accepts as a risk death by the latter means, and in the event of its occurrence gives a right of action against the insurer. These considerations convince us that the statute does not abridge the freedom of contract further than to prevent the elimination of suicide from the risks covered by any policy to which it is applicable. But it is said that if this be so the statute can be evaded and its purpose defeated by providing for the payment of some inconsiderable sum, such as one dollar, in the event of suicide. We think otherwise. That would be an indirect but substantial elimination of

suicide from the risks covered by the policy and would be as much within the inhibition of the statute as would be a stipulation directly declaring suicide to be a defense. We do not doubt that any policy falling within the operation of the statute must provide substantial insurance against suicide, but beyond this the freedom of contract is not affected.

It is also said that the courts of the state and this court have heretofore placed upon the statute a construction different from that given to it in this opinion, and the following cases are cited as sustaining the contention: Logan v. Fidelity and Casualty Co., 146 Mo. 114, 47 S. W. 948; Knights Templar, etc., Co. v. Berry, 1 C. C. A. 561, 50 Fed. 511; Knights Templar, etc., Co. v. Jarman, 44 C. C. A. 93, 104 Fed. 638; Keller v. Travelers' Ins. Co., 58 Mo. App. 557. The first three contain no statement, discussion or decision of the question now under consideration. The policy sued upon in each attempted in terms or in effect to eliminate suicide from the risks covered by it and to provide that in the event of the death of the insured by that means the insurer would be liable only for the repayment of what it had received in the way of premiums or assessments. Thus, instead of accepting suicide as a risk, the policy attempted to make it a ground for completely avoiding the right to any insurance. It is doubtful whether the policy sued upon in the other case is properly distinguishable from those just described; but, if it is, the case tends to sustain the plaintiff's contention, because it was there held by the St. Louis Court of Appeals, Judges Bond and Rombauer, that where a policy provides that the insurance in the event of the insured's suicide shall be less than when death results from other causes, it thereby makes suicide a partial defense to an action upon the policy, and in that respect is violative of the statute. We are unable to assent to that conclusion. The considerations before mentioned persuade us that it is clearly wrong, and as the St. Louis Court of Appeals, while of high repute, is not a court of last resort, whose decisions settle the law of the state, we must give effect to our own interpretation of the statute.

Looking at the present policy, the material portions of which have been heretofore set forth, we find that it is headed "Principal Sum $5,000"; that in the event of injury not resulting in death it provides for certain payments graduated according to the circumstances, nature and extent of the injury, and that in the event of death, it provides for the payment (a) of double the principal sum when death results from injury sustained while the insured is riding as a passenger in or on any public passenger conveyance, etc.; (b) of the principal sum when death results from injuries not otherwise classified; (c) of two-thirds of the principal sum when death results from injury sustained while riding a bicycle in a race for prize or purse; (d) of one-fifth of the principal sum when death is due to sun-stroke, freezing, unnecessary exposure to obvious risks of injury, etc.; (e) of one-tenth of the principal sum when death is due to injuries intentionally inflicted upon the insured by another or is due to suicide, sane or insane, etc. The classification of the several risks appears to be rational and honest, and the amount of insurance provided for the class which includes

suicide is $500, a very substantial sum when compared with $6.25, the premium paid. Considered in its entirety, the policy precludes any suggestion of a purpose to evade the statute.

The plaintiff places some reliance upon the particular language in which the parties have expressed their engagement and points out that one paragraph of the policy is so framed that if not otherwise restrained, it creates a liability on the part of the insurer in the sum of $5,000 in the event of the death of the insured by any means covered by the policy, and that another paragraph is so framed that it reduces the liability to $500 in the event of death by suicide. This it is said indicates a purpose to make suicide a defense, to the extent of $4,500, to an action on the policy. There are two answers to this. One is, that the paragraph first named is not the whole policy, but only part of it, and that an action instituted to enforce that paragraph, regardless of the proper effect thereon of other paragraphs, would not, in truth, be an action on the policy, but an inadmissible action on an inseparable portion of it. The other is that as it was consistent with the statute for the parties to enter into an engagement, whereby the amount of insurance provided for in the event of suicide was less than the amount provided for in the event of death by other means, it is immaterial in what particular language they have expressed that engagement.

Our conclusion is that the judgment was right, and it is affirmed.