## UNITED STATES v. BREEDING.

(District Court, W. D. Virginia, at Big Stone Gap. September 3, 1913.)

GRAND JURY (§ 3*)—FEDERAL COURTS—NUMBER TO BE SUMMONED.

Judicial Code (Act March 3, 1911, c. 231) § 276, 36 Stat. 1164 (U. S. Comp. St. Supp. 1911, p. 239) specifies the method of drawing jurors in federal courts by commission provided for, and section 282 declares that every grand jury shall consist of not less than 16 nor more than 23 persons, and that if, of the persons summoned, less than 16 attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury. *Held* that, since neither section nor any federal statute limits the number to be summoned, such question is to be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

determined by the common law; and hence it is proper for the court, in its discretion, to order the summoning of more than 23, in order that on their appearance in court there shall be a sufficient number of qualified persons to constitute a lawful grand jury.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 3–6; Dec. Dig. § 3.*]

Alfred Breeding was indicted for carrying on the business of a retail liquor dealer without having paid the special tax in due time. On motion to quash the indictment. Denied.

Barnes Gillespie, Dist. Atty., of Tazewell, Va., for the United States.

S. H. Sutherland, of Clintwood, Va., for defendant.

McDOWELL, District Judge. The defendant, who was indicted at the August, 1913, term of the court at Big Stone Gap for carrying on the business of a retail dealer in malt liquors without having paid the special tax, in due time moved to quash the indictment because more than 23 veniremen for grand jury service had been summoned to attend the court. This motion was overruled and an exception noted.

The first order for juries for the said term directed the clerk and jury commissioner, inter alia, to draw from the box for the Big Stone Gap division of the district the names of *30* veniremen for grand jury service. The next order directed the issue of writs of venire facias. The returns on the writs were in proper form. When the grand jury was called it was found that 24 qualified veniremen were present. Under a standing rule of court, made and entered May 13, 1911, providing for such contingency, an alphabetical list of the veniremen was made by the clerk, and the first 23 veniremen were chosen as grand jurors. The grand jury thus formed was duly sworn and charged, and the sole point for consideration is the propriety of ordering more than 23 veniremen to be summoned.

Prior to May, 1911, it was the practice in this district to have only 23 veniremen summoned for grand jury service. Owing chiefly to the great number of exemptions from jury service allowed by the Virginia statutes, it happened not infrequently that less than 16 qualified veniremen were found present. The provisions of section 808, Rev. Stat. (U. S. Comp. St. 1901, p. 626)—section 282, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1164 [U. S. Comp. St. Supp. 1911, p. 239])—in connection with Act June 30, 1879, c. 52, § 2, 21 Stat. 43 (U. S. Comp. St. 1901, p. 624)—section 276, Judicial Code—when complied with, made the procedure for supplying a deficiency of grand jurors so dilatory, inconvenient, and expensive that the present practice was adopted. At that time the rule of court above mentioned was adopted, and I prepared two rather voluminous opinions, one pointing out certain serious objections (perhaps of greater weight in this circuit than elswhere) to any method of supplying a deficiency of grand jurors other than a strict compliance

with the statutes above mentioned, and the other stating the reasons and authority for adopting the practice of ordering more than 23 veniremen to be summoned in the first instance. For present purposes it will be sufficient to set out a part of the latter opinion.

It should first be said that no charge of undue extravagance can be made against the present practice. In the more than two years that this practice has been in force, during which time about 30 terms of court have been held, the present writ of venire for grand jurors is, so far as I can recall, the first one that has brought to court more than 23 qualified veniremen. Usually only from 18 to 20 of those in attendance are found to be qualified.

The first objection to summoning more than 23 veniremen is, of course, the seeming difficulty in fairly selecting those who are to serve. The rule of court above mentioned certainly wholly obviates this objection. This rule being followed, it is a matter of pure chance. There is no room for even any suspicion of unfairness in selecting the grand jury of 23 from the qualified veniremen present.

The only remaining objection that occurs to me must be found in a supposed implication from the statutory requirement (section 808, Rev. Stat.; section 282, Jud. Code) that grand juries shall not exceed 23 members. There is certainly in the statute no express inhibition against *summoning* more than 23 veniremen, and there are some very strong reasons against finding in the statute any implied inhibition.

Section 808, Rev. Stat., was taken from Act March 3, 1865, c. 86, 13 Stat. 500. That act was general in operation and applied to the federal courts in practically all of the states. At that date—as well as prior thereto and since (27 L. R. A. 848 et seq.)—the laws of the different states (as appears from the sources of information at present available) fixed various different numbers of persons to be summoned as grand jurors, and in some of the states the maximum number allowed to be summoned was less than 16. 27 L. R. A., note page 851; 12 Am. St. Rep., note page 904; U. S. v. Wilson, 6 McLean, 604, 28 Fed. Cas. 725; U. S. v. Tuska, 14 Blatchf. 5, 28 Fed. Cas. 234; State v. Ostrander, 18 Iowa, 435, 440, 444; State v. O'Brien, 18 R. I. 105, 25 Atl. 910. While deriving the nature of the state laws indirectly from the sources stated is not as satisfactory as would be an actual examination of the statutes of the various states in force in March, 1865 (which at present is impracticable), still the information thus obtained seems to fully justify the conclusion that in enacting the statute in question Congress did not intend that the number of persons to be summoned as grand jurors should be regulated by the state laws.

Of the possibility that Congress had by its own previous legislation fixed the number of persons to be summoned as grand jurors, it should be said that every statute to which reference is made in the margin of the Revised Statutes has been examined, and that nothing has been found which seems to bear such interpretation. See Act Sept. 24, 1789, c. 20, 1 Stat. pp. 88, 112; Act May 13, 1800, c. 64, 2 Stat. 82; Act May 20, 1826, c. 136, 4 Stat. 188; Act July 20,

1840, c. 47, 5 Stat. 394; Act Aug. 8, 1846, c. 98, 9 Stat. 73. See, also, opinions infra.

As the intent of section 808 may have been that the common law should govern it is of interest to ascertain the common-law rule in respect to the number of persons to be summoned as grand jurors, at least since the grand jury as we know it came into existence. In 1 Chitty, Crim. Law, 310, 311, it is said:

"Upon the summons of any sessions of the peace, and in cases of commissions of oyer and terminer and gaol delivery, there issues a precept, either in the name of the king or of two or more justices, directed to the sheriff, upon which he is to return *24 or more* out of the whole county, namely, a sufficient number out of every hundred, from which the grand jury is selected. Upon this precept, although it *generally specifies only 24, the sheriff usually returns 48.* * * * Though the number of jurymen thus returned to the court amount to 48 or more, not more than 23 are to be sworn. * * * At the sessions, it is not an unusual practice, after 15 or 16 names have been· called, to consider the inquest complete, and not to insist upon the service of the rest, who may happen to be in attendance."

In 3 Bacon, Abr. (Ed. 1794) p. 232 ("Juries"), it is said:

"Upon the summons of any session of the peace, and in cases of commissions of oyer and terminer and gaol delivery, there goes out a precept, either in the name of the king or of two or more justices, directed to the sheriff, upon which he is to return *24 or more*, out of the whole county, namely, a considerable number out of·every hundred, out of which the grand inquest * * * are taken and sworn. * * *"

Bacon and Chitty both cite 2 Hale's P. C. 154, as authority. In 4 Blackstone's Com. 302, it is said that the sheriff is bound to return *24* good and lawful men. But, as he also refers to 2 Hale's P. C. 154 as authority, it seems that Blackstone (who is followed in 10 Ency. Pl. & Pr. 367, and 20 Cyc. 1317) failed to·accurately follow the text of his authority. In 2 Hale's P. C. 154, the language is:

"Upon this precept the sheriff is to return *24 or more* out of the whole county, a considerable number out of every hundred, out of which the grand inquest at the session of the peace, oyer and terminer, or gaol delivery are taken. * * *"

In Lesser's Hist. Jury System, p. 148, it is said:

"In the reign of Edward III, the separation of the grand and petit jury was an established factor in English criminal jurisprudence. * * * After the various enactments enumerated and changes referred to, it was only a question of time to dispense with the service of the knights who acted as elisors, and by precept of the court directly to authorize the sheriff of each county to return the names of *24 or more* persons from whom the grand jury is chosen. * * *"

In Thompson & Merriam on Juries, § 483, it is said:

"* * * There issued a precept, * * * directed to the sheriff, upon which he returned *24 or more* out of the whole county, a certain number being from each hundred, from which panel the grand jury was organized."

In Crown Circuit Companion (Ed. 1816)· p. 4, it is said:

"Before the justices of assize go their circuits, they issue out their precept, directed to the sheriff, to cause the assizes to be summoned, and the persons who are ·obliged to attend thereon to appear before them, in consequence of which he issues out his warrant directed to his bailiffs. * * * He is also

to cause *24 or more* good and lawful men of the county, some out of every hundred, and which are called the grand inquest, * * * to attend. * * *"

See, also, Rex v. Marsh, 6 A. & E. 236, 33 E. C. L. Rep. 143.

From the foregoing, and especially from what is said in Chitty (see, also, People v. McKay, 18 Johns. [N. Y.] 214, 215), it seems reasonably clear that the precept specified the number of persons to be summoned, and that the number could be more than 24, although that was the number usually specified. It follows that, if the intent of Congress in enacting section 808 was to leave the number of persons that should be summoned as at common law, there can be little or no doubt of the right to order more than 23 to be summoned. And such seems to be the most reasonable construction to put upon the statute.

It is a canon of statutory construction that a statute is not to be construed as making any innovation upon the common law which is not expressed, or which its words do not clearly require. In Arthur v. Bokenham, 11 Mod. 148, it is said:

" * * * Statutes are not presumed to make any alteration in the common law further or otherwise than the act does *expressly declare.* * * *"

In Shaw v. Railroad Co., 101 U. S. 557, 565 (25 L. Ed. 892), it is said:

"No statute is to be construed as altering the common law farther than *its words import.* It is not to be construed as making any innovation upon the common law which it does not *fairly express.*"

In Northern Securities Co. v. U. S., 193 U. S. 197, 361, 24 Sup. Ct. 436, 466 (48 L. Ed. 679), Mr. Justice Brewer said:

"Whenever a departure from common-law rules and definitions is claimed, the purpose to make such departure should be *clearly shown.*"

In Johnson v. Railroad Co., 117 Fed. 462, 466, 54 C. C. A. 508, 512, it is said:

"The common or the general law is not further abrogated by such a statute than the clear *import of its language necessarily requires.*"

In Chauncey v. Dyke, 119 Fed. 1, 17, 55 C. C. A. 579, 595, Judge Sanborn says:

"The common or the general law is not further abrogated by such a statute than the *clear import of its language necessarily requires.*"

In 26 Am. & Eng. Ency. (2 Ed.) p. 662, it is said:

" * * * Statutes are not presumed to make any alteration in the common law further or otherwise than the *clear import of the statutory language necessarily requires.*"

See, also, Sutherland, Stat. Constr. § 290; Black, Interp. Laws, pp. 110, 233; Whitfield v. Insurance Co., 144 Fed. 356, 361, 75 C. C. A. 358.

Assuredly the language of the statute in question neither necessarily nor at all clearly requires that it be construed as repealing the common-law powers of the judges as to the number of veniremen to be summoned for grand jury service.

Again, construing this statute as limiting the number of persons that may be summoned to 23 brings about frequently great public inconvenience. Not only must the grand jurors present be held idle, but the frequently numerous witnesses recognized to appear before the grand jury, the persons bound over or held for action by the grand jury, and sundry court officials are delayed, it may be for several days, if less than 16 qualified veniremen respond. If there be any real doubt as to the intent of Congress in this respect, that construction which leads to such inconvenience should be avoided. In U. S. v. Fisher, 2 Cranch, 359, 386 (2 L. Ed. 304), Chief Justice Marshall said:

"It is also true that, where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the Legislature be plain. * * * "

See, also, 1 Fed. Stats. Ann. xlix; 26 Am. & Eng. Ency. (2d Ed.) 648, note 3; Black, Interpret. Laws, p. 102; Sutherland, Stat. Constr. § 323.

Mr. Justice Brewer's opinion in U. S. v. Eagan (C. C.) 30 Fed. 608, 610, 611 (from which Judge Thayer dissented, and which possibly may not ultimately prevail), is a striking application of the doctrine in question. In order to avoid the inconvenience involved in a literal construction of Act June 30, 1879, c. 52, 21 Stat. 43, 4 Fed. Stats. Ann. 749 (U. S. Comp. St. 1901, p. 624), requiring that "all such *jurors*, grand and petit, including those summoned during the session of the court, shall be publicly drawn from a box," etc., Mr. Justice Brewer thought it proper to substitute the word "juries" for the word "jurors" used in the statute.

The conclusion reached is that Congress intended to leave the number of persons that should be summoned for grand jury service, as at common law, to the discretion of the trial judges. The entire silence of section 808, as well as of all previous and later statutes, on this point, is itself an indication of some force in support of such conclusion. But of much greater force is the fact that, in order to find in section 808 an implied intent to limit the number to be summoned to 23, we must unnecessarily so construe the statute as to create public inconvenience, and must, in defiance of an elementary canon of construction, assume an intent to change the common law which is not expressed and is neither necessarily nor clearly implied. The chief argument for an implied intent to restrict the number that may be summoned is found in the fact that the statute restricts the maximum number that may be impaneled. At common law only 23 persons could act as grand jurors, but this fact did not forbid summoning more than 23 persons. By parity of reason the statute, in forbidding that more than 23 persons be impaneled as grand jurors, does not impliedly forbid that more be summoned.

The foregoing conclusion is seemingly justified by the following authorities:

In U. S. v. Insurgents, Whart. St. Tr. 102, 26 Fed. Cas. 499, 514 (1795), the objection was to the number of trial jurors summoned. Mr. Justice Patterson said:

"The objections that have been suggested on this occasion are principally founded on the twenty-ninth section of the judicial act of Congress, which refers the federal courts to the state laws for certain regulations respecting juries. But the words of this reference are clearly restricted to the mode of designating the jury by lot, or otherwise, and to the qualifications which are requisite for jurors, according to the laws and practice of the respective states. Since, therefore, the act of Congress does not itself fix the number of jurors, nor expressly adopt any state rule for the purpose, it is a necessary consequence that the subject *must depend on the common law; and by the common law the court may direct any number of jurors to be summoned*, on a consideration of all the circumstances under which the venire is issued."

In U. S. v. Dow, Taney, 34, 25 Fed. Cas. 901 (1840), Mr. Justice Taney said:

"The following points were ruled by the court, before the jury were sworn: * * * The act of Congress of September 24, 1789, c. 20, § 29 [1 Story's Laws, 63; 1 Stats. 88], in referring to the laws of the states in relation to juries, applies only to the mode of selecting them, and not to the number to be summoned. The Circuit Courts are bound to follow the laws of the respective states in which they are held, in the mode of forming the juries, and in determining upon their qualifications; but the *laws of the states do not regulate the courts of the United States in the number to be summoned*; upon this subject, the *courts of the United States are governed by the rules of the common law.*"

In U. S. v. Tuska, 14 Blatchf. 5, 28 Fed. Cas. 234, 235 (1876), Judge Benedict said:

"This case comes before the court upon a demurrer to a plea in abatement. All the averments of the plea relate to the constitution of the grand jury that found the indictment. The material averments are that 48 persons were summoned by the marshal to attend as grand jurors. * * * In regard to the order directing that 48 persons be summoned to attend, I desire to say, further, that it is not open to the charge of irregularity. No statute of the United States fixes the number of persons to be summoned, nor has the state law as to number been adopted; and, moreover, there is no uniform law of the state upon the subject, in force throughout the locality comprising the Southern district of New York. In some parts of the district the state law allows the summoning of 50 persons; in other parts, the number is 36. Resort to the common law also fails. Whether, at common law, an irregularity would be committed by the sheriff in selecting and summoning more than 24 jurors to attend as grand jurors, I do not stop to inquire. If such be the rule applicable to an officer charged with the duty, not only of summoning but of selecting good and lawful men to compose a grand jury, the reason of the rule fails under our system of procedure, where the marshal has simply to summon designated persons, and the court, in the absence of any other mode provided by statute, must select the requisite number of fit persons from those in attendance. In the absence of statutory regulation, the court must necessarily determine what will be a sufficient number to enable a grand jury to be constituted; and the existence of this power will be found to be implied in section 808, Rev. St. U. S. It should be added that it has been of frequent occurrence, in this district, to direct that 48 persons be summoned; and, in at least one instance, an order similar to the one in this case was made by the Circuit Judge."

See, also, U. S. v. Tallman, 10 Blatchf. 21, 28 Fed. Cas. 9; Fries Case, Whart. St. Tr. 458, 9 Fed. Cas. 826, 921, 923.

In U. S. v. Richardson (C. C.) 28 Fed. 61, 69 (1886), Mr. Justice Gray, considering an objection to the method employed to obtain a grand jury, after great consideration of the Acts of Congress of September 24, 1789 (1 Stat. 88), May 13, 1800 (2 Stat. 82), June 20, 1840

(5 Stat. 394), sections 800, 802, and 803, Rev. Stat., and the Act of June 30, 1879 (21 Stat. 43), said:

"*The courts of the United States must determine for themselves the number of jurors to be summoned. * * *" Citing U. S. v. Dow, supra; U. S. v. Reed, 2 Blatchf. 435, 27 Fed. Cas. 727; U. S. v. Tallman, supra; U. S. v. Woodruff, 4 McLean, 105, 28 Fed. Cas. 761; Alston v. Manning, Chase, 460, 1 Fed. Cas. 575.

In Wolfson v. U. S., 101 Fed. 430, 432, 41 C. C. A. 422, 424 (1900):

"The court ordered that the names of 23 persons be drawn to constitute the grand jury. The court also ordered that 10 additional names of persons be drawn to serve as grand jurors. The grand jury was organized by first calling the 23 persons first drawn. Sixteen of them appeared, and were sworn as grand jurors, together with 7 of the 10 ordered to be drawn and summoned."

Motion to quash an indictment found by the grand jury obtained as above stated was overruled on the ground of delay in making the objection. The appellate court does not discuss the question we are concerned with, but the case is of interest as showing the construction put upon section 808, Rev. Stat. by the trial court.

In U. S. v. Mitchell (C. C.) 136 Fed. 896, 905 (1905), Judge Bellinger said:

"The summons in this case was for 30 jurors, and it is suggested, rather than argued, that this fact may operate to invalidate the grand jury. Experience has shown that it is necessary, and it has therefore become the practice in this court, to issue the venire for a greater number than the maximum required, inasmuch as not all of those summoned will be found, and among those found some will be entitled to exemption, and others will be disqualified, through sickness or otherwise, for jury service. In the present case, of those summoned, 19, not including Robertson, who was exempt, reported for duty. This number was afterwards increased, by the presence of Peebler and Buffum, to 21. If the venire had been only for the maximum number required, it is doubtful if a quorum could have been had at the time appointed for the organization of the grand jury. The practice which has resulted in the particular complaint is founded in necessity, and I have no doubt of its legality and propriety. It is immaterial, and *does not affect the legality of the grand jury, if more than 24 persons are summoned to appear as jurors.* Stevenson v. State, 69 Ga. 68; Turner v. State, 78 Ga. 177; People v. Harriot, 3 Parker, Cr. R. [N. Y.] 112; State v. Watson, 104 N. C. 735, 10 S. E. 705; Lowrance v. State, 4 Yerg. (Tenn.) 147."

After writing the foregoing an effort was made to ascertain the practice of the federal trial courts generally in respect to the number of persons ordered summoned as grand jurors. Excepting the judges in North Carolina (where a state practice is followed—United States v. Breese [D. C.] 172 Fed. 767), and in Indiana, Kentucky, and the Western district of Arkansas (governed by special statutes—4 Fed. Stat. Ann. 752, 754), a request was sent to all of the District Judges in the United States for information as to the practice of the judges in the respect mentioned. From the answers received it appears:

In the Eastern, Western and Southern districts of Texas and in the Western district of Tennessee, as in North Carolina, the practice is to summon a sufficient number of jurymen, without distinguishing between grand and petit jurors. In the Western district of Missouri the practice is to summon 21 grand jurors. In the Northern and

Southern districts of Alabama, in Delaware, Kansas, Eastern district of Illinois, Maryland, Massachusetts, Western district of Michigan, Minnesota, Southern District of Ohio, Eastern and Western districts of·Oklahoma, Eastern district of Pennsylvania, per Judge Holland, Western district of Pennsylvania, Rhode Island, South Carolina, Utah, Eastern district of Virginia, Southern district of West Virginia, Western district of Wisconsin, and in Wyoming the practice is to summon only 23 grand jurors. Of the judges of these 21 districts, one expresses the opinion that section 808 forbids summoning a greater number than 23, two express a doubt on the subject, and nine express the opinion that the statute does not limit the number that may be summoned. The remainder express no opinion.

In the following districts the number of persons summoned as grand jurors is as shown below:

| | | |
|---|---|---|
| M. D. Ala. (Judge Jones) | more than | 23 |
| E. D. Ark., 23 and 6 alternates | | 29 |
| N. D. Cal. | usually 40 | to 45 |
| S. D. Cal. | over | 23 |
| Colo. | about | 30 |
| Conn. | | 27 |
| N. D. Fla | | 27 |
| S. D. Fla | usually 23, occasionally over | 23 |
| N. D. Ga | | 36 |
| S. D. Ga | at least | 30 |
| Idaho | usually 23, sometimes over | 23 |
| N. D. Ill. { Judge Carpenter | | 30 to 35 |
| N. D. Ill. { Judge Landis | from 45 | to 50 |
| S. D. Ill. | | 24 |
| N. D. Iowa | | 23 to 30 |
| S. D. Iowa | | 30 to 40 |
| E. D. La. | | 40 |
| N. D. Miss. | | 35 to 40 |
| E. D. Mo. | | 40 |
| Mont. | | 45 to 50 |
| Neb. 23 and 7 alternates | | 30 |
| Nev. | never less than | 30 |
| N. J. | | 24 |
| N. D. | | 30 to 33 |
| E. D. N. Y. | | 36 |
| N. D. N. Y. | | 25 or 26 |
| S. D. N. Y. | | 50 to 75 |
| W. D. N. Y. | | 36 |
| N. D. Ohio | as high as | 30 |
| Or. | | 30 to 35 |
| E. D. Pa. | | 24 |
| M. D. Pa. | | 23 to 24 |
| S. D., 23 and 5 alternates | | 28 |
| E. D. Tenn. | | 25 |
| Vt. | | 23 to 25 |
| E. D. Wash. | | 25 |
| W. D. Wash. | occasionally over | 23 |
| N. D. W. Va. | | 24 |
| E. D. Wis. | | 30 |

A practice which is followed in so many other districts, which often obviates great public inconvenience, which is fortified by sound rules of statutory construction and a very considerable weight of authority, should not be lightly abandoned.