## GAUGHAN v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 5, 1927.

No. 7389.

1. **Indictment and information ⬀71—Counts of indictment charging sales of liquor held insufficient for want of particularity.**

Counts of indictment charging sales of certain amount of beverage alcohol at Omaha,

Neb., on or about named dates, *held* insufficient for failure to name purchasers or otherwise describe offenses.

2. **Indictment and information ⬀71—Counts of indictment charging transportation of alcohol held not insufficient for want of particularity.**

Counts of indictment charging transportation of specific amounts of alcohol in automobiles of particular make, and that transportation took place at Omaha, Neb., on or about named dates, *held* sufficient on demurrer.

3. **Criminal law ⬀1166½(5)—That clerk and jury commissioner did not alternately place names drawn in jury box held not prejudicial to defendant.**

That clerk and jury commissioner, in selecting names for jury box, did not put the names in the box alternately as drawn, but placed them aside and later dumped them into the jury box in two batches, *held* not prejudicial to defendant.

4. **Jury ⬀59(4)—Jury commissioner, once appointed, continues as such until removed, without necessity of reappointment.**

There being no term fixed for a jury commissioner, a commissioner, once appointed, continues as such until removed, without necessity of reappointment.

5. **Jury ⬀59(1)—Order directing jury commissioner of previous year to serve in that capacity held equivalent to reappointment.**

Order directing one who had previously acted as jury commissioner to serve in that capacity *held* equivalent to a reappointment.

6. **Grand jury ⬀8—Drawing of only 23 grand jurors, and others, termed alternates, to be used in event grand jury cannot be had out of the 23 first drawn, held not improper.**

The practice of drawing only 23 grand jurors, and of drawing others, termed alternates, to prevent relay in event a grand jury cannot be had out of the 23 first drawn, *held* not improper.

7. **Criminal law ⬀489—Refusal to permit cross-examination of prohibition agents as to their qualifications as experts in telling different kinds of intoxicating liquor held error.**

In prosecution for transporting intoxicating liquor, where particular prohibition agents testified to their experience in telling different kinds of intoxicating liquor, and that in their opinion liquor transported was grain alcohol, it was error for court to exclude cross-examination of such witnesses as to their qualifications.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Tom Gaughan was convicted of violating the National Prohibition Act, and he brings error. Reversed, with directions.

Eugene D. O'Sullivan, of Omaha, Neb. (William N. Jamieson and Charles J. Southard, both of Omaha, Neb., on the brief), for plaintiff in error.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., and William J. Froelich, Asst. U. S. Atty., of O'Neill, Neb., and Andrew C. Scott, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. Plaintiff in error was tried and convicted on the second, third, fourth and fifth counts of an indictment. At the direction of the court he was acquitted on the first count, which charged him and another with a conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.). The second count charged that on or about May 7, 1925, at Omaha, Nebraska, Gaughan and another named person transported ten gallons of beverage alcohol in a Packard automobile; the third count charged that on or about May 7, 1925, they sold ten gallons of beverage alcohol at Omaha, Nebraska; the fourth count charged that on or about May 20, 1925, they transported ten gallons of beverage alcohol in a Peerless touring car at Omaha, Nebraska; and the fifth count charged that on or about May 20, 1925, they sold ten gallons of beverage alcohol at Omaha, Nebraska. We find no evidence in the record that the other person named in the four counts had anything to do with the claimed transactions. It does not appear that he was put upon trial with plaintiff in error.

[1, 2] The two sales counts do not state to whom the sales were made, nor otherwise describe the offenses, except to charge that the sales were of ten gallons of beverage alcohol and were made at Omaha, Nebraska, on or about named dates. For reasons stated in our opinion in the Jarl and Monroe Cases (C. C. A.) 19 F.(2d) 891, filed this day, we think the court erred in overruling the demurrer to these two counts. The other two counts, however, do give some identification of the offenses intended to be charged. Each charges a transportation of ten gallons of beverage alcohol and names the kind of vehicle in which each transportation was made, and that these transportations took place at Omaha, Nebraska, on or about named dates. We are, therefore, of opinion that the court did not err in overruling the demurrer as to them.

[3] There was a plea in abatement, to which the district attorney filed answer, and testimony was taken at length on the plea. It challenged the calling and impaneling of the grand jury: (a) That the required number of names were not in the jury box when the jury was drawn; (b) that the person who assumed to act as commissioner in aiding the clerk was not legally authorized to act as jury commissioner; (c) that no legal or proper venire facias was issued and served upon the parties drawn as grand jurors or those who were drawn as so-called alternates; and (d) because one of the persons who served as a grand juror did not possess the qualifications required by law. The plea did not charge that the names selected and deposited by the clerk and the commissioner in the jury box were not alternately put in said box by the clerk and the commissioner, but evidence was taken on that point, which disclosed that something over 150 names had been selected by each of them and each dumped into the box the whole lot of slips containing names so selected by the clerk and the commissioner. This was done before the grand jurors who indicted plaintiff in error were drawn from the box. The plea also alleges that the matters so complained of violated rights of plaintiff in error and were prejudicial to him, but it does not state in what way he was prejudiced.

The commissioner was appointed as such in 1914, and there had been no reappointment after that date, though an order had been made in each year thereafter, as jurors were needed, that he act as commissioner with the clerk in filling the box and drawing names therefrom. The order of October 16, 1925, under which the grand jury challenged by the plea was drawn, contained the provision that the clerk and "George H. Thummel, who was heretofore appointed commissioner, he being a citizen of good standing residing in the district of Nebraska and a well known member of the principal political party in said district opposing that party to which the aforesaid clerk belongs," should publicly select and draw from the box the names of grand jurors on a day and at an hour therein stated, to-wit, the names of 23 persons possessing the qualifications of grand jurors, and also the names of 15 persons of like qualifications as alternates to serve as grand jurors at the September Term, 1925, and that a venire issue for the grand jurors so drawn, requiring them to appear in court at a named day and hour.

[4-6] It is objected that because the judge who appointed the jury commissioner in 1914 had been dead for about ten years the commissioner named had no authority to act, that he in fact was not a commissioner after the death of the district judge who appointed

him. There is no term fixed for a jury commissioner, and after being once appointed we see no necessity of reappointment, and unless and until he be removed by an order it would appear that he continues as commissioner and his services may thereafter be availed of. Furthermore, the order directing that he act as commissioner was equivalent to a reappointment. There was no proof that any of the jurors was disqualified. There is nothing to show that the rights of plaintiff in error were in anywise prejudiced because of the matters complained of. Some of the 23 drawn as grand jurors were excused and those drawn as alternate grand jurors were used as grand jurors. It appears from the opinion of Judge McDowell in U. S. v. Breeding (D. C.) 207 F. 645, that other districts followed the practice of drawing what were termed alternates for the grand jury panel, confining the number to be drawn as grand jurors to 23. That was doubtless based on the idea that inasmuch as 23 constitute the maximum number of grand jurors, only that number could be drawn as grand jurors, and the so-called alternates were drawn to prevent delay in event a grand jury could not be had out of the 23. The general practice, as shown in the case referred to, was to draw a sufficient number, 40 or more, to serve as grand jurors, and then make up the grand jury out of those so drawn. This practice seems to have prevailed at common law, but the method adopted in Nebraska and two other districts accomplished the same end, and we see no valid objection to it. We find no merit in the plea, and think the court did not err in overruling it. See Brookman v. U. S. (C. C. A.) 8 F.(2d) 803; Agnew v. United States, 165 U. S. 36, 17 S. Ct. 235, 41 L. Ed. 624; Crowley v. United States, 194 U. S. 461, 24 S. Ct. 731, 48 L. Ed. 1075; Hammerschmidt v. United States (C. C. A.) 287 F. 817.

[7] The prosecution called three Prohibition Agents as witnesses for the purpose, among other things, of establishing that the liquid named in counts two and four was beverage alcohol. One of them, Mr. Benard, on direct examination testified that it had been his duty on numerous occasions to taste and smell intoxicating liquor, including grain alcohol. He was then asked:

"Q. Did you smell the contents of Government's Exhibits 1 and 2? A. Yes, sir.

"Q. From your experience what do they contain? A. In my best judgment it is grain alcohol.

"Q. Did you taste and smell the contents of Government's Exhibits 3 and 4, A. I did.

"Q. What do they contain in your opinion. A. Grain alcohol."

These exhibits were the containers used in the two transportations. The court would not permit defendant's counsel to examine this witness on that subject. It was not a question of limiting the cross-examination but wholly denying that right, as will appear from the following:

"Q. Now you have been qualified here, Mr. Benard, as an expert in telling the different kinds of intoxicating beverages. Do you regard yourself as an expert—

"The Court (interrupting): That is immaterial how he regards himself.

"Mr. O'Sullivan: I would like to finish the question, your honor.

"The Court: Well that is not—

"Q. (interrupting). Do you think you have any peculiar or particular ability to tell what the contents of those four exhibits or any of them is?

"The Court: Well, I will exclude that question. I have never changed my notion that it does not take any peculiar ability or any peculiar knowledge to know what intoxicating liquors are in a general way. It is known to millions of our people for a hundred years.

"Mr. O'Sullivan: The defendant excepts to the remark of the court.

"The Court: Yes; go ahead.

"Q. Can you give us any idea about whether or not you can accurately and correctly tell the alcoholic content or the particular kinds of liquor in these four exhibits or any of them?

"Mr. Scott: Objected to for the reason that the foundation was laid on direct examination.

"Objection sustained.

"To which ruling of the court defendant excepts.

"Mr. O'Sullivan: For the purposes of the record I would like to pursue the inquiry to determine whether or not he has the necessary skill.

"The Court: If any skill is required along that line that has been stated on direct examination.

"Mr. O'Sullivan: Well, if the court forecloses me I will desist but I want an exception.

"The Court: Yes; all right; exception allowed."

The court pursued the same course as to Prohibition Agent Dunnigan. He testified in chief for the prosecution as follows:

"Q. Has it been your duty on numerous occasions to taste intoxicating liquor? A. It has.

"Q. Among other liquors has it been your duty to taste and smell grain alcohol? A. Yes, sir.

"Q. Did you taste and smell the contents of these four cans of liquor? A. I did.

"Q. Are you able to determine grain alcohol by taste and smell? A. I think I am.

"Q. In your opinion what do these four cans contain? A. I think it is what you would call grain alcohol.

"Q. Your answer is that in your opinion it is grain alcohol? A. Yes."

When defendant's counsel sought to cross-examine the witness this occurred:

"Q. Now, you testified that you thought you could tell the contents of Government's Exhibits 1 to 4 inclusive, and you have denominated the contents as grain alcohol, in your opinion. Have you had any special training or schooling along that line? A. Nothing more than five years of tasting various kinds of liquor and working in the business is all.

"Q. Prior to the time you became a Government officer in the Federal Prohibition Department, you had no knowledge of alcoholic beverages? A. Well, I could tell the difference between alcohol and whiskey prior to that.

"Q. You couldn't tell the difference between grain alcohol and ethyl alcohol, could you? A. No, I wouldn't say I could.

"Q. And you are not qualified to do that now, are you? A. Well, I think I can tell grain alcohol from various kinds such as cane alcohol.

"Q. What would be the distinct difference between the taste and smell of ethyl alcohol and 'ester' alcohol? A. I don't know—I don't know what you are talking about, 'ester' alcohol.

"Q. Do you know any distinction or difference between grain alcohol and ethyl alcohol? A. It is considered the same thing, I know that.

"Q. You don't regard yourself as an authority on this subject of liquor, and regard yourself as an authority on being able to tell the difference between them by taste and smell, do you?

"Mr. Scott: Objected to—

"The Court: Oh, I don't care whether he does or not. I am not going to put in my lifetime listening to this foolishness about various liquors. You have his testimony that he had a chance to taste and smell it and that it is alcohol, in his opinion, and that is all I want to hear.

"Mr. O'Sullivan: The defendant excepts to the remark of the court."

The third witness, Beazell, a Prohibition Agent, gave like testimony in chief but no attempt was made to cross-examine him on that subject. He became 21 years of age on March 18, 1924, and was appointed prohibition agent on May 19 following. He was a high school student just before his appointment. The transactions here under consideration took place in the early part of 1924, and this witness testified that it had been his duty to taste and smell grain alcohol on several hundred occasions and that he tasted and smelled the contents of these four cans and in his judgment they contained grain alcohol.

We had occasion to consider the right of a defendant to cross-examine witnesses on matters of this kind in Gallaghan v. United States, 299 F. 172, and we there held that it was an absolute right that could not be denied by the court, and that to deny it constituted prejudicial and fatal error. We there cited the authority on which our conclusion was based. The point of law in the two cases is identical, and the facts are the same in principle. We considered the law on the subject again in Svarney v. United States, 7 F.(2d) 515. On account of this error we see no escape from an order of reversal.

The judgment on each count will be reversed, with directions to grant new trials on the second and fourth counts and to sustain the demurrer as to the third and fifth counts.

It is so ordered.