# KNIGHTS TEMPLARS' AND MASONS' LIFE INDEMNITY COMPANY *v.* JARMAN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 48. Argued October 17, 1902.—Decided December 8, 1902.

1. That section of the Revised Statutes of Missouri declaring that in all suits upon policies of life insurance it shall be no defence that the insured committed suicide, applies not only to cases where the insured takes his own life voluntarily and in full possession of his mental faculties, but to all cases of self-destruction by the insured, whether sane or insane, unless he contemplated suicide at the time he made his application for the policy.

The fact that this court has held that a clause avoiding a policy in case the insured should die by his own hand applied only where the insured intentionally took his own life while sane, does not estop the court from giving a different construction to a statute embodying an important question of public policy.

2. While under the decisions of the Supreme Court of Missouri it must be held that the above statute was repealed by the act of 1887, authorizing the incorporation of insurance companies on the assessment plan, as to policies thereafter issued, this statute of 1887 was prospective in its operation, and with respect to policies issued anterior to the date of that act, the rights of the parties are to be determined by the suicide statute.

It was further held that a law passed in 1897, specially applying the suicide statute to insurance companies doing business upon the assessment plan, was constitutional, and applied to this policy, inasmuch as the insured did not die until 1898.

3. The promise of the company to pay the plaintiff the sum of $5000 and all the money paid on the policy in assessments, was not impaired by subsequent amendments to the constitution, inasmuch as these amendments operated only upon policies thereafter issued.

THIS was a writ of certiorari to review a judgment of the Circuit Court of Appeals affirming a judgment of the Circuit Court for the Western District of Missouri, overruling the defence of suicide to an action upon a policy of life insurance, and awarding plaintiff judgment for the amount of the policy and assessments thereon.

An agreed statement of facts shows defendant to be an Illinois corporation, organized "for the purpose of furnishing life indemnity or pecuniary benefits to widows," etc.; and that on October 19, 1885, it issued to John P. Jarman, plaintiff's husband, and a citizen of Missouri, a policy of insurance or certificate of membership, subject to the constitution and by-laws of the company and certain conditions in the policy, one of which provided for its avoidance in case of self-destruction, " whether voluntary or involuntary, sane or insane." The seventh stipulation was that "John P. Jarman, while insane to such an extent as to be incapable of understanding the nature or consequences of his act, took his own life, and came to his death on the 12th day of September, 1898, by a gunshot wound, inflicted by himself. It is not contended, however, by plaintiff that such self-destruction was the result of accident." The further material facts are set forth in the opinion.

Defendant having refused to pay the amount of the policy on account of the suicide of the insured, Rosa B. Jarman, his widow and beneficiary, brought an action January 19, 1899, in the Circuit Court of Grundy County to recover the amount of the policy, $5000, and assessments, which action was subsequently removed to the Circuit Court of the United States for the Western District of Missouri, upon the ground of diversity of citizenship. The case was submitted to the court without the intervention of a jury, and resulted in a judgment in favor of the plaintiff in the sum of $6006.30, which was affirmed by the Circuit Court of Appeals. Whereupon petitioner sued out a writ of certiorari from this court.

*Mr. Hervey Bryan Hicks* and *Mr. S. S. Gregory* for petitioner.

*Mr. Frederick H. Bacon* for respondent. *Mr. E. M. Harber* and *Mr. A. G. Knight* were with him on the brief.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case turns principally upon the applicability to the policy in question of sec. 5982 of the Revised Statutes of Missouri of 1879, afterwards sec. 5855, Rev. Stat. 1889, (hereinafter termed the suicide statute,) which was in force in 1885, when this policy was written. The section is as follows:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, it shall be no defence that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

1. The first defence in order of time is that Jarman did not commit suicide within the meaning of this act, since the stipulated fact was that he shot himself while insane to such an extent as to be incapable of understanding the nature or conse-

quences of his act. The position of the company in this connection is that the enactment above quoted, that "it shall be no defence that the insured committed suicide," relates only to cases where the insured takes his own life voluntarily, while sane, and in full possession of his mental faculties; and hence, the provision of the policy, that "in case of the self-destruction of the holder of this policy, whether voluntary or involuntary, sane *or insane*, . . . this policy shall become null and void," applies, and exonerates the company from all liability beyond that provided in the policy, "that in the case of the suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees such an amount of his policy as the member shall have paid to this company on the policy in assessments on the same without interest."

This contention is founded upon the ruling of this court in *Life Insurance Co.* v. *Terry*, 15 Wall. 580, and cognate cases, to the effect that a similar provision avoiding a policy in case the insured should "die by his own hand" applied only where the insured intentionally takes his own life, while in possession of his ordinary reasoning faculties, and does not apply when he is unable to understand the moral character, the general nature, consequences and effects of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist.

But we are of opinion that the word "suicide" is not used in this statute in its technical and legal sense of self-destruction by a sane person, but according to its popular meaning of death by one's own hand, irrespective of the mental condition of the person committing the act. The result of the construction urged by the defendant would be that, if a perfectly sane man voluntarily and from anger, pride or jealousy, or a mere desire to escape from the ills of life, puts an end to his life, and thereby becomes guilty of the crime of self-murder, and of a fraud upon the insurance company, the company would still be responsible, unless it could be shown that the insured contemplated suicide at the time he made his application for the policy; while, if he committed the same act while *insane*, and therefore irresponsible, the statute would not apply, and the company would not

be liable under the terms of the policy, which provided that it should become void "in case of the self-destruction of the holder, . . . . whether voluntary or involuntary, sane or *insane.*" In the one case, as we held in *Ritter* v. *Mutual Life Insurance Co.*, 169 U. S. 139, that is, of self-destruction by a sane man, not only would the policy be void, whether there were a provision to that effect or not, but even a contract that it should be valid under such circumstances was thought to be against public policy and subversive of sound morality, (p. 154;) while in the other case of a suicide by an insane person, the insured is guilty of no wrong to the company, if he be incapable of understanding the moral consequences of his own act, and there is no reason in law or morals why the company should not pay. It is impossible to suppose that the legislature could have contemplated such a contingency, and a construction that would lead to this result should be deemed inadmissible, unless the language of the statute were too plain to be misunderstood.

The statute was manifestly intended to apply to all cases of self-destruction or suicide, unless the same were contemplated at the time application was made for the policy, and the fact that we may have given a different construction to the same words when used in a policy of insurance does not militate against this theory. The same words may require a different construction when used in different documents, as, for instance, in a contract, and a statute; and identity of words is not decisive of identity of meaning where they are used in different connections and for different purposes. In a contract, the technical rights of the parties only are involved—in a statute, an important question of public policy. If this statute were read alone and disembarrassed by the construction given to these words in policies of insurance, not a doubt would arise as to its application to all cases of self-destruction; and when we examine the theory of the defendant, and find that it leads to the conclusion that the company would be liable if the insured had committed a fraud upon it, and would not be liable if he had taken his life, though guilty of no fraud, the theory must be rejected without hesitation. The construction we have given to the words "committed suicide" in this act is fortified by

reference to sec. 6570, Rev. Stat. Missouri, 1889, referring to the construction of statutes, which provides that "words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." Undoubtedly the word suicide in its usual sense includes all cases of self-destruction.

2. We are next brought to the consideration of the applicability of the suicide statute, sec. 5982, to policies of this company issued at this time. This act, upon its face, applies to all insurance companies "doing business in this State," and to all policies issued by such companies after the date of the act. It undoubtedly governs the rights of the parties in this case, except so far as the same may have been modified by an act passed in 1887, authorizing the incorporation of insurance companies on the assessment plan. Sec. 10 of this act, Laws, 1887, pp. 199, 204, is now known as sec. 5869 of the Revised Statutes of Missouri of 1889, and provides that corporations "doing business under this article" shall make certain annual statements, which, as well as other requirements, are also made applicable to foreign companies, with the following proviso: "*Provided, always,* That nothing herein contained shall subject any corporation *doing business under this article* to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth." It appears that the defendant in this case, which is a citizen of Illinois, elected to take advantage of this law, and on June 18, 1888, received from the insurance department of the State authority to do business thereunder upon the assessment plan. As to policies issued upon the assessment plan subsequent to this date and prior to 1897, the Supreme Court of Missouri held that the suicide statute, above quoted, does not apply. *Haynie* v. *Knights Templars &c. Co.*, 139 Missouri, 416. To the same effect are *Hanford* v. *Massachusetts Benefit Association*, 122 Missouri, 50; *Jacobs* v. *Omaha Life Association*, 142 Missouri, 49, and *Aloe* v. *Mutual Reserve Association*, 49 S. W. Rep. 553. It is true the authority of these cases was somewhat shaken by the recent case of *Aloe* v. *Fidelity Mutual Life Association*, 55 S. W. Rep. 993, which

did not involve the repeal of the suicide statute, but of another statute, providing that no misrepresentation should be deemed material, unless the matter misrepresented should have contributed to the death of the insured. The case, however, turned, as did the cases above cited, upon the scope of the proviso of sec. 5869, and a persuasive opinion was delivered by Judge Valliant in favor of the theory that the proviso was intended to relate only to the organization of the corporations, and the extent to which they should be subject to the supervision of the Department of Insurance, and under the superintendent's control. This opinion was delivered in the first department of the Supreme Court, and, there being a dissent, the cause was transferred to the court *in banc*, wherein a majority of the court apparently differed from the views expressed by Judge Valliant, and reaffirmed the cases above cited. These cases, including the *Haynie* case, must therefore be regarded as representing the views of the Supreme Court that the suicide statute was actually repealed by the act of 1887 as to policies thereafter issued, and that view is, of course, binding upon this court.

But we are of the opinion that this statute was intended to be prospective in its operation, and that the rights of the defendant as an assessment company under the act of 1887, began in June, 1888, with its certificate of authority to do business under that act, and with respect to policies anterior to that date the rights of the parties are to be determined by the suicide statute, sec. 5855, Rev. Stat. 1889. It must be borne in mind that the repealing act of 1887, now known as sec. 5869, Rev. Stat. 1889, was not passed as an independent statute, but as section 10 of a new statute of fourteen sections, entitled "An act to provide for the incorporation and regulation of associations, societies or companies doing a life or casualty insurance business on the assessment plan." The prior sections define what shall be deemed a contract of insurance upon the assessment plan, how the corporations are formed, what the policies should specify, giving general details with regard to the management of the business, and then providing, in section 10, for annual statements made by "every corporation doing business under this act," with the provision that "nothing herein contained

shall subject any corporation doing business under this act to any provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth." This whole act, slightly amended in language, was carried into the Revised Statutes of 1889 as chapter 89, article III. It seems to us quite clear that the declaration of the proviso that corporations "do ing business under this act" shall not be subject to the general insurance laws of the State, applies only to corporations which took out a certificate of authority from the insurance department to do business on the assessment plan, and to policies thereafter issued by such companies, notwithstanding the fact that such companies may have issued policies under the general insurance laws of the State prior to the act of 1887. The words "doing business" evidently refer to issuing policies and not to paying them. A man does business when he contracts obligations—he ceases to do business when he discharges them.

This is not only the natural construction of the act, but to hold that the proviso applies to policies antecedently issued might open it to the imputation of impairing the obligation of contracts previously entered into between these companies and their insured, since these policies amounted to a special agreement on the part of the companies that they would be liable in case of suicide—an agreement upon which the insured and his beneficiary were entitled to rely. The provision of the suicide statute, that it shall be no defence that the insured committed suicide, and that any stipulation in the policy to the contrary shall be void, must be considered as imposing a condition upon every policy thereafter issued, notwithstanding any stipulation in the policy to the contrary. It must be treated as an independent and binding obligation, and as overriding and nullifying any stipulation of the parties. As Mr. Justice Gray observed in *Equitable Life Assurance Society* v. *Clements*, 140 U. S. 226 : "The statute . . . is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter."

But we do not find it necessary to express an opinion whether, if the act of 1887 were plainly applicable upon its face to antecedent policies, it would be objectionable as impairing the obli-

gation of contracts, entered into between the insurance company and insured, inasmuch as we are clearly of opinion that it should not be held to apply to such unless its language imperatively demand it. *City Railway Co.* v. *Citizens' R. R. Co.*, 166 U. S. 557, 565.

Were the act of 1887 more ambiguous than it is as to its application to past transactions, we should still be disposed to apply the cardinal rule of construction, that where the language of an act will bear two interpretations, equally obvious, that one which is clearly in accordance with the provisions of the constitution is to be preferred. Endlich on Statutes, sec. 178. This rule was applied by this court in *Granada County Supervisors* v. *Brogden*, 112 U. S. 261; *Presser* v. *Illinois*, 116 U. S. 252, 269, and *Hooper* v. *California*, 155 U. S. 648, 657.

We do not wish to be understood, however, as expressing an opinion upon the constitutionality of the act of 1887, if it were applied to prior policies, but simply as holding that, in view of the language of the act, and the doubtfulness of its constitutionality as applied to prior policies, it should only be given effect in cases of policies thereafter issued.

But there is another argument in this connection which ought not to be overlooked, and which is, in our opinion, decisive that the suicide statute is applicable to this policy. In 1897 a law was passed by the legislature of Missouri, specially applying the suicide statute to insurance companies doing business upon the assessment plan. This was done by an amendment to sec. 5869, which will hereafter be considered. Two objections to the applicability of this statute are deserving of consideration. First, that it is in conflict with art. IV, sec. 28, of the constitution of Missouri, declaring that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title;" and also art. IV, sec. 25, that "no law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose."

The act was entitled "An act to repeal section 5869 of article 3 of chapter 89 of the Revised Statutes of Missouri of 1889, entitled 'Insurance companies on the assessment plan,' and to enact a new section in lieu thereof, to be known and designated

as section 5869 " of the same chapter, " relating to statement of affairs of assessment insurance companies and misrepresentations made in securing a policy of insurance, and defence thereon, for such misrepresentations," and as first introduced contained the section as herein printed in the margin.[1] Subsequently the bill was amended by inserting between the word " sections " and the figures " 5912 " the figures " 5855," (the suicide statute). This was not strictly germane to the other sections cited, which related to the purposes set forth in the title to the act, and it is argued that the legislature exceeded its constitutional powers in inserting these figures.

In the absence of an express adjudication of the Supreme Court of the State upon this question, we are forced to rely upon other decisions concerning the construction given to this provision of the state constitution. In *State* v. *Miller*, 45 Missouri, 495, it was held that the object of this provision was to prevent logrolling, and surprise and fraud on members ; and in *State ex rel. Wolfe* v. *Bronson*, 115 Missouri, 271, 276, it is said that " these and other cases show that this section of the constitution is to be reasonably and liberally construed and applied, due regard being to its object and purpose. It was designed to prevent the insertion of disconnected matters in the same bill. The section asserts only two propositions. The first is that no bill shall contain more than one subject, and the second is that this single subject must be clearly expressed in the title. If all

---

[1] SEC. 5869. Every corporation doing business under this article, shall annually, on or before the first day of February, return to the superintendent of the insurance department, in such manner and form as he shall prescribe, a statement of its affairs for the year ending on the preceding 31st day of December, and the said superintendent, in person or by deputy, shall have the power of visitation of and examination into the affairs of any such corporation, which are conferred upon him in the case of life insurance companies by the laws of this State; and all such foreign companies are hereby declared to be subject to, and required to conform to the provisions of sections 5912, 5849 and 5850 of the Revised Statutes of Missouri of 1889, and governed and controlled by all the provisions in said sections contained: *Provided, always*, That nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth and provided.

the provisions of the bill have a natural relation and connection, then the subject is single, and this too though the bill contains many provisions. As to the second proposition, namely that the single subject must be clearly expressed in the title, it is sufficient to say that the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject matter covered by the act; mere matters of detail need not be stated in the title." And in *State* v. *Heege*, 135 Missouri, 112, 118, it is said : " A mere reference to the section to be amended, without other description of the subject matter of the amendatory law, is, under the rulings of this court, a sufficient title to an act which deals exclusively with the subject of the section amended." It was also said in *State* v. *County Court*, 128 Missouri, 427, 440 : " The practice of legislation by reference to sections of the authorized version of the statutes (without other description of the subject of the amending act) has been followed quite generally in this State on the faith of early rulings of the Supreme Court approving such methods of lawmaking. So much has been done, and so many rights have been acquired, on the basis of those rulings, that we hold that the question of their correctness ought not to be reopened at this day. We adhere to them and follow them as an expression of the settled law of Missouri."

As the new act was simply an amendment of section 5869 these two last cases would seem to be decisive of the opinion of the Supreme Court upon the statute in question, upon which its decision is of course obligatory upon this court.

Section 5869 of the Revised Statutes of 1889 deals with four questions relating to the law of insurance by companies doing business on the assessment plan. First, providing for an annual statement ; second, a visitation and examination into the affairs of the corporation ; third, a general statement that foreign companies are subject to certain provisions ; and, fourth, a recital as to what, among the general insurance laws of the State, shall be applicable to these companies.

While, as already stated, the Supreme Court has not decided as to the constitutional power of the legislature to incorporate the suicide statute into this amended section 5869, the decisions

above cited, that a mere reference to the section amended is sufficient to sustain the validity of the law, would seem to cover the case, and for this reason the suicide statute, though not strictly germane to the other sections mentioned, is germane to the business of insurance on the assessment plan. Bearing in mind that the suicide statute was originally repealed, as to these policies, by section 5869, as enacted in 1887, it would seem that an amendment introduced into the same section restoring its application to these same policies would not be unconstitutional.

A second objection to the application of this statute is that if the petitioner be right in his contention that, by the repeal of the suicide statute, the contract between the assured and the company relieving the latter from liability in case of suicide, became effective, the legislature could not thereafter, by reënacting the statute or attempting to subject assessment companies to its provisions, impair the contract subsisting between the assured and this petitioner.

The answer to this argument is not difficult. No new contract was made and no new rights were vested between the act of 1887, repealing the suicide statute, and the act of 1897 restoring it. All that the latter act purported to do was to reinstate the parties in their original rights prior to the act of 1887, which rights had not been affected by anything done during the ten years between the two acts. Upon defendant's theory, if the act of 1887 had been in existence but a single day the same result would have followed.

Our conclusion, then, is that the court below was correct in holding that the suicide statute, as originally applied to this policy, had not been repealed at the death of Jarman in 1898, when the cause of action arose.

3. It is also assigned as error in this case that the court permitted a recovery, not only of the amount of the policy, but of all the money paid by assured in assessments upon such policy.

The promise of the company was to pay the plaintiff " the sum of $5000, and *all the money paid on the policy in assessments*, subject to the limitation as to the amount of such pay-

ment as is provided in sec. 1 of art. VII of the constitution on the back of this policy, which section reads as follows :

" Sec. 1. Upon due notice and satisfactory proof of the death of a member of this company, the board of directors shall within sixty (60) days pay the widow, children or heirs of the deceased member, (and in the order named unless otherwise ordered by the member during his lifetime or in his will), the amount set forth in the deceased member's policy of membership : Provided that a policy of membership for $5000 shall be good for all the money in the death fund arising from one assessment ; provided, it shall not exceed $5000 and *all the money paid on the policy in assessments ;* and a certificate for $4000 shall be good for four-fifths of all the money in the death fund arising from one assessment, provided it shall not exceed $4000 and all the money paid on the policy in assessments ; and so on in the same proportion as to all certificates."

The assessments paid upon the policy amounted to $811.83, and the right of the plaintiff to recover this amount in addition to the principal sum of $5000 would be beyond question, were it not for certain changes thereafter made in the constitution, which it is insisted were binding upon the plaintiff under the following clause, found in the application of Jarman for membership : " I further agree, if accepted, to abide by the constitution, rules and regulations of the company, as they now are, or may be constitutionally changed hereafter."

The application further stated that the application was made a part of the policy by reference thereto.

In virtue of the privilege thus given to amend its constitution the company, on January 8, 1889, amended art. IV, sec. 3, of the constitution so as to read as follows :

" Sec. 3. Policies of membership may be issued upon a basis of benefits ranging in amounts to $5000, and all the money paid in assessments upon the policy *for the first five years.*"

The proviso of art. VII, sec. 1, was also amended at the same time to correspond with the above amendment and to read as follows :

" *Provided,* That a policy of membership for $5000 shall be good for all the money in the death fund arising from one

assessment; provided, that it shall not exceed $5000 and all the money paid on the policy in assessments *for the first five years.*"

On February 20, 1894, this section was again amended by striking out the proviso altogether.

It seems that these sections thus changed from an agreement to repay all assessments upon policies to an agreement to pay all assessments for the first five years, was found or deemed to be, too liberal; and in January, 1898, the company made an important additional amendment by striking out entirely the proviso for the repayment of assessments, under which it now claims to be relieved altogether from paying more than the principal sum of the policy. The article as finally amended reads as follows :

" SEC. 3. Policies of membership may be issued upon a basis of benefits ranging in amounts to $5000, but no member shall hold more than one policy at the same time, except one additional policy on the term plan," etc.

In view of the fact that both of these amendments imply a prospective operation upon policies which *may be issued*, it would seem to be unnecessary to consider the question discussed with much detail in briefs of counsel, whether the amendments were intended to operate upon policies already issued. In our opinion it is clear that they were not, and conceding the proposition that Jarman had agreed to abide by the constitution, rules and regulations of the company, as they then were, or might be constitutionally changed thereafter, this agreement could have no operation upon changes which, upon their face, indicated that they applied only to policies thereafter to be issued. To cover this case he should have promised to abide by amendments thereafter made, though they were intended to apply only to future policies.

The judgment of the court below awarding the plaintiff the full amount agreed upon in the policy, without damages, is accordingly

*Affirmed.*

MR. JUSTICE HARLAN took no part in the decision of this case.