**GOLDMAN et al. v. AMERICAN DEALERS SERVICE, Inc.**

No. 215.

Circuit Court of Appeals, Second Circuit.

April 2, 1943.

Mathias F. Correa, U. S. Atty., of New York City (Samuel Brodsky and Arnold C. Stream, both of New York City, of counsel), for appellants.

Lester Lewis Jay, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

There is no statutory provision for the institution of forfeiture proceedings with respect to documents seized under 39 U.S.C.A. § 498. Accordingly, we construe the order of the district court as requiring the return of the seized check unless proceedings were promptly brought for violation of 18 U.S.C.A. § 304.

Were it not for 39 U.S.C.A. § 499 and 28 U.S.C.A. § 747,[2] appellee could have brought a replevin action against appellants in which appellants would have been defeated unless they had justified by showing that the articles had been lawfully taken. But 39 U.S.C.A. § 499 expressly

[2] That section reads: "All property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

**400**

provides that "all laws for the benefit and protection of customs officers making seizures for violating revenue laws shall apply to officers making seizures for violating the postal laws." Accordingly, 28 U.S.C.A. § 747 is applicable here. In the summary proceeding brought by appellee under that section,[3] the court cannot pass on the merits, i.e., cannot determine whether the seized articles were such as to constitute them letters and that they were therefore lawfully seized under 39 U.S.C.A. 498.[4] We have so held in Re Behrens, 2 Cir., 39 F.2d 561, 563, 564.[5]

■ This is not a case where one whose property has been seized under § 498, conceding that the seizure was proper, demands that the property be returned to him unless proceedings are promptly brought by the government short of the six months named in § 498. Here, appellee insists that the seizure was illegal, as appellee says it proposes to show when that question is properly raised. For reasons above noted, we cannot here pass on that question, but must assume that the seizure may have been unlawful. Indeed that is the assumption which appellants in effect ask us to make, since they request us not to pass on "the merits." They ask us to decide that regardless of whether the checks were lawfully taken—and therefore assuming that they were not—the courts are nevertheless powerless to do anything to aid appellee to procure their return unless (a) six months have elapsed after the unlawful taking and (b) no proceeding has been begun by the government within those six months. Consequently, for purposes of construing the statute, we are required to assume that appellants, government officials, without a shadow of lawful authority, have seized a citizen's property. Officials, when they thus behave, are stripped of their official character; what they do "is the mere wrong and trespass of those individual persons who falsely speak and act" in the name of the government; an official, who has acted in that manner, "ceased to be an officer of the law, and became a private wrongdoer"; "though professing to act as officers," appellants were, on the assumed facts now before us, "individual trespassers guilty of a wrong in taking the property" of appellee "illegally."[6] This, then, is not a case where officials, having lawfully obtained possession of documents, impound them for use as evidence in connection with a contemplated prosecution. Precedents like Perlman v. United States, 247 U.S. *(,* 38 S.Ct. 417, 62 L.Ed. 950, and Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159, are, therefore, not in point. If this were such a case, a very strong showing, to say the least, would have to be made by the complaining citizen, a showing for instance that the delay of the government in instituting proceedings was exceptionally long and that the property taken was perishable or in some other way would deteriorate.

---

3 We regard as frivolous appellant's suggestion that the proceeding was defective because begun by a notice of motion instead of by an order to show cause.

4 That section reads: "Any post-office inspector, collector, or other customs officer, or United States marshal or his deputy, may at all times seize all letters and bags, packets or parcels, containing letters which are being carried contrary to law on board any vessel or on any post route, and convey the same to the nearest post office, or may, by the direction of the Postmaster General or Secretary of the Treasury, detain them until two months after the final determination of all suits and proceedings which may, at any time within six months after such seizure, be brought against any person for sending or carrying such letters."

5 We there said, after citing cases, that none of them went "to the extent of holding that the legality of the seizure may be determined on a summary petition by the owner for the return of his property," and held that the lower court "should not have passed upon the legality of the seizure" but should merely have directed the seizing official "to institute proceedings promptly * * * or to abandon the seizure and return the property."

6 Poindexter v. Greenhow, 114 U.S. 270, 282, 288, 290, 330, 5 S.Ct. 903, 910, 914, 962, 29 L.Ed. 185, 207; In re Ayers, 123 U.S. 443, 500, 8 S.Ct. 164, 180, 31 L.Ed. 216. Cf. Cunningham v. Macon & Brunswick R. R. Co., 109 U.S. 446, 452, 3 S. Ct. 292, 609, 27 L.Ed. 992; United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Hopkins v. Clemson Agricultural College, 221 U.S. 636, 643, 31 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A.,N.S., 243; Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 620, 32 S.Ct. 340, 56 L.Ed. 570; Ex parte La Prade, 289 U.S. 444, 455, 53 S.Ct. 682, 77 L.Ed. 1311.

It follows then that, as the appellants would have us construe 39 U.S.C.A. § 498, it would mean this: Government officers may unlawfully take the property of a citizen if they believe (or say that they believe) it was not, but should have been, sent by mail, and may then retain that property for two months after the final determination of proceedings begun by the government, which proceedings need not be begun for six months after the unlawful taking. In other words, those officials can, for five months and twenty-nine days, hold such property, unlawfully taken by them, and never bring any proceedings, and with no power on the part of any court meanwhile to interfere. It is difficult to believe that Congress had anything of the sort in mind. If public officials, having illegally seized a person's property, are authorized to refuse for months to return it, the possibilities of oppression are limitless. The statute thus construed verges on unconstitutionality. Of course, it is not proper for courts to attempt to prevent possible abuses of official power by holding legislation unconstitutional which confers upon officials the right legitimately to exercise such power; a constitution which gave judges that kind of authority, and which they employed, would cause that paralysis of government and that condition of anarchy, leading ultimately to despotism, which our Constitution, so the Federalist tells us, was designed to prevent.[8] But here we are asked to sustain a statute so interpreted that it confers upon public officials an immunity from one of the usual consequences of acts done by them illegally, i.e., not within the scope of the powers conferred upon them by the legislature. To declare an Act of Congress unconstitutional is "the gravest and most delicate duty" that courts are called upon to perform. For that reason, it is well settled that the courts must, if possible, interpret a statute so as to avoid raising grave doubts as to its validity; for that purpose, they may freely depart, if necessary, from the statute's literal meaning.[9] As Mr. Justice Holmes said, in such circumstances a statute may be given a "strained" construction.[10]

We therefore interpret 39 U.S.C.A. § 498, taken together with 28 U.S.C.A. § 747, as meaning that the seized property may be held for two months after termination of proceedings begun by the government; that such proceedings must be brought not later than six months after the seizure; but that, under 28 U.S.C.A. § 747, the court may direct that the property be returned unless the government brings such proceedings with reasonable promptness short of the full six months; what is reasonable promptness will, of course, depend on the particular facts; there might be situations in which a delay for six months would be reasonable; that would be particularly true where the citizen admitted (what appellee does not admit) that the property had been lawfully taken. Under the statutes thus interpreted, the order of the trial judge was proper. Appellants made not the slightest showing and in fact did not suggest that any injury or inconvenience would result to the government from instituting a prosecution six weeks and more after the seizure; on the other hand, the retention of the checks might impair or even destroy appellees' business,

[7] This is not a case of improper use of the mails; in such a case, the power of Congress may be unusually extensive, as the use of the mails may be regarded as a privilege to which conditions may be attached. Cf. Monograph of the Attorney General's Committee on Administrative Procedure, Sen.Doc. No. 186, 76th Cong., 3d sess., Pt. 12, p. 2.

[8] The Federalist (Earle's edition, 1937), No. 70 (p. 454); cf. No. 68 (p. 444) and No. 51 (p. 379).

[9] United States v. Delaware & Hudson Co., 213 U.S. 366, 407, 408, 29 S.Ct. 527, 53 L.Ed. 836; United States v. Standard Brewery, 251 U.S. 210, 220, 40 S.Ct. 139, 64 L.Ed. 229; State of Texas v. Eastern Texas R. R. Co., 258 U.S. 204, 217, 42 S. Ct. 281, 66 L.Ed. 566; Bratton v. Chandler, 260 U.S. 110, 114, 43 S.Ct. 43, 67 L. Ed. 157; United States v. Jin Fuey Moy, 241 U.S. 394, 401, 402, 36 S.Ct. 658, 60 L. Ed. 1061; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L. Ed. 206; Harriman v. I. C. C., 211 U.S. 407, 422, 29 S.Ct. 115, 53 L.Ed. 253; Knights Templars & Indemnity Co. v. Jarman, 187 U.S. 197, 205, 23 S.Ct. 108, 47 L. Ed. 139; Panama R. R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L.Ed. 748; Baender v. Barnett, 255 U.S. 224, 226, 41 S.Ct. 271, 65 L.Ed. 597; Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906; Reinecke v. Trust Co., 278 U.S. 339, 348, 349, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397.

[10] Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206.

and the possible loss of the cash discounts appeared not unlikely to cause serious loss. Accordingly, the trial court did not abuse its discretion. In re Behrens, 2 Cir., 39 F.2d 561. How much showing citizens must make in every such case we need not here decide; but when the court is required, as here, to assume illegality in the seizure, it would seem that too much of a burden should not be put on the citizen.

■ Appellants urge, however, that appellee did not exhaust its administrative remedies, referring, not to any general regulation of the Postmaster General affording any such remedy, but to a provision in the very order of the Postmaster General directing the seizure of the documents here; that provision is to this effect: "Any person, association, firm, co-partnership or corporation considering himself or itself aggrieved by this order or any seizure thereunder may apply in writing to the Postmaster General at Washington, D. C., for a hearing and for an order modifying, amending or retracting this order in whole or in part, or setting aside such seizures or for the return of letters seized. Upon request, full and prompt opportunity will be afforded to produce all relevant evidence and to be heard in support of his or its application in person or by counsel." We find no statutory provision conferring upon the Postmaster General the authority to set up by an order an administrative proceeding with respect to a specific seizure. 5 U.S.C.A. § 369 does not do so.[11] 5 U.S.C.A. § 22 authorizes the head of each department to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and property appertaining to it. Even making the questionable assumption that that provision would authorize the Postmaster General to issue a general regulation setting up an administrative hearing of the kind described in his order, here he has not promulgated any such general regulation. Moreover, it is highly doubtful whether, all other questions aside, a regulation as vaguely worded as to the details of an administrative proceeding as is the provision in the order would suffice. This is not a case in which, by action of the Postmaster General, a person is deprived of the privilege of using the mails;[12] consequently decisions construing statutory provisions as to the Postmaster General's powers in such cases are not pertinent.[13] In all the circumstances, the doctrine of the "exhaustion of administrative remedies" is, we think, entirely inapplicable here. Since, as we interpret 28 U.S.C.A. § 747, the courts are given power to require a return of the seized property unless court proceedings are promptly brought, we cannot believe that that judicial power can be diminished by an administrative order not founded upon any express or implied provision of any statute. It is a strange suggestion that an officer, charged with unlawfully taking a citizen's property, can prescribe that that citizen cannot maintain an action seeking redress until the citizen first submits to a hearing before the officer himself, a hearing for which no provision is made, expressly or by implication, in any statute. Surely a sheriff, charged with taking property without a valid writ, could not defend in a replevin suit on the ground that he had, on his own initiative, required that no such suit be maintained until he had conducted his own investigation. Although the question is not before us, we are strongly inclined to believe that the legislature could require recourse to such an administrative hearing as a condition precedent to suit by the citizens; but Congress has not so required with respect to seizures by Post Office officials such as that now before us.

■■ The Postmaster General was not a necessary party to the proceedings below; the district court's power, under 28 U.S.C.A. § 747, exists because the documents are, within its jurisdiction, "in the custody of the law"; no court in the district in which the Postmaster General can be served could act under that section.

Affirmed.

L. HAND, Circuit Judge (dissenting).

Section 498, Title 39 U.S.C.A., gives power to a post office inspector to seize let-

---

[11] That section provides in part: "It shall be the duty of the Postmaster General: * * * Second. To instruct all persons in the Postal Service with reference to their duties. * * * Ninth. To superintend generally the business of the department and execute all laws relative to the Postal Service."

[12] See footnote 4, supra.

[13] And the same is true of cases relating to contracts made with the government for the carriage of mails, and the like.

ters which are being carried in violation of the postal monopoly and to take them to the nearest post office. I assume that when they reach such a post office, they are to be delivered to the "owner or sender" unless the Postmaster-General shall "otherwise direct." § 258, Title 39 U.S.C.A. The section (§ 498) concludes by saying that, if the Postmaster-General or the Secretary of the Treasury so directs, the inspector "may * * * detain them until two months after the final determination of all suits and proceedings which may, at any time within six months after such seizure, be brought against any person for sending or carrying such letters." The purpose pretty clearly is to allow the Post or the Treasury—each of which has an interest in such prosecutions—meanwhile to impound the letters as evidence. My brothers do not differ with me so far, but they say that, although six months is the limit of the period during which letters may be impounded, the district court may cut it down when justice requires. I cannot read the language so; the words to me mean that the letters may be "detained" for the whole six months, if the Postmaster-General or the Secretary decides that until then the proper time to sue has not arrived. I can see nothing to indicate that their decision may be reviewed by a court; and, if that had been intended, I should certainly have expected that it would not have been left to implication. It is true that a delay of six months may be unnecessary—I should think it generally would be—; in the case at bar it seems to have been used to force the plaintiff to an "administrative proceeding" for which I can find as little warrant in law as my brothers. Nevertheless, the fact that official powers may be abused is no answer; all powers may be, and it is ordinarily not the function of courts to correct the abuses when they arise.

In re Behrens, 2 Cir., 39 F.2d 561, was quite a different situation. The statute did not profess to fix a time within which the Treasury must decide to sue, and must prepare its case; the owner of the property had no recourse but to await the expiry of the statute of limitations. I agree that the district court has as absolute a jurisdiction over these letters as it had over that property: the last clause of § 499 of Title 39 U.S.C.A., incorporates § 747 of Title 28 U.S.C.A., by reference, and makes it immaterial whether the postal laws are revenue laws. But the fact that the letters are subject to the summary orders of the district court is also immaterial, if—as I believe—§ 498, Title 39 U.S.C.A. gives the inspector power to detain them for six months. It does not follow that the "owner or sender" has no relief, if the property seized is not "letters." Section 498 would not in that case confer power upon the inspector; and it may be that the district court could summarily direct their return. Whether it could in this way anticipate one of the issues of the trial of any prosecution for which the letters were being held I need not say; the plaintiff does not ask us to decide whether the documents here seized are "letters," or to direct their return.

Finally, I can see no constitutional question in the offing which should make us hesitate. Prosecuting officers have in general power to impound documents, provided they have come by them lawfully. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159. The possibility that they may withhold them longer than is necessary does not seem to me one of those major grievances against which the Constitution protects the individual; not at least when the term of any possible abuse is limited so narrowly as it is here. Letters do not deteriorate with time; their contents can be learned, if it is not already known; copies are generally as serviceable as the originals. In the case at bar I assume that the cheques are being impounded along with the memoranda attached to them; but payment can be stopped and new cheques drawn and delivered. On the other hand, to exercise any such jurisdiction the district court must review the action of the Post; its reason for delaying the prosecution, which in turn must inevitably involve any contemplated prosecution and the time needed to prepare for it. That might seriously hamper the prosecution itself; at least it would duplicate much of the work. And for what? Only to insure the owner of the letters against delay for some part of six months in the institution of any prosecution against him. I cannot take seriously the suggestion that the solution, whatever it be, of such a conflict of interest, can raise a constitutional doubt.