NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0184n.06

Nos. 20-5866/5868

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Apr 13, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHARLES SAMUEL POPE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS, BUSH, and LARSEN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Charles Pope appeals his conviction for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(b)(2), and the revocation of his supervised release from a prior conviction for receipt of child pornography. Pope claims that the district court erred in denying his motion to suppress evidence of child pornography found in electronic devices discovered during searches of Pope's home and car, arguing that his probation officer lacked reasonable suspicion to conduct the searches. For the following reasons, we affirm both Pope's conviction and the revocation order.

I.

Pope was serving a life term of supervised release after finishing his prison sentence for receiving child pornography. The terms of Pope's supervised release provided, in relevant part, that a probation officer may search his "house, residence, vehicle, . . . computers . . . , other electronic communications or data storage devices or media . . . only when reasonable suspicion

exists that the defendant has violated a condition of their release and that the areas to be searched may contain evidence of this violation." Another condition subjected Pope "to Polygraph, Computer Voice Stress Analysis, or other similar device to obtain information necessary for supervision, case monitoring, and treatment at the discretion and direction of the U.S. Probation Officer" as well as to "maintenance exams thereafter." That condition further specified that "[n]o violation proceedings will arise solely on a defendant's failure to pass an examination." Finally, Pope was prohibited from possessing or using any devices or computers capable of accessing the Internet without his probation officer's prior written approval.

In 2016, Pope requested a modification of his supervised-release conditions to allow him to have a computer, monitored by the probation office, and a video-gaming system. After the district court initially denied his request for a computer, he continued to ask his probation officer and treatment provider for Internet access. In 2017, the district court agreed to modify Pope's supervised-release conditions to allow him to access a computer, subject to monitoring by the probation office. Soon after Pope was permitted such access, his probation officer noticed certain irregularities in his pattern of computer use. For instance, after several reports indicated that Pope used his authorized computer daily, he abruptly ceased using the computer entirely for a period of six days. Pope also sent an email to his probation officer that appeared to have been sent from an unapproved smartphone. On a separate occasion, the probation officer observed a screenshot of Pope's bank account indicating a purchase at GameStop.

As part of Pope's supervised-release conditions, Pope's probation officer visited him at his home each month. The officer conducted such a visit on December 13, 2017, while Pope was living with his mother in Bowling Green, Kentucky. Pope's mother answered the door for the probation officer, who walked into the home through the kitchen, as usual. As he passed into the

living room, the probation officer witnessed Pope, wet and clad in only unbuttoned jeans, run into the living room from the back of the house. The probation officer testified that Pope "immediately picked up what appeared to be a gaming controller," placed it into a storage cube, and "slammed" the lid shut.

"Seem[ing] kind of excited," according to his probation officer, Pope accompanied the officer on their typical walk-through of the home. The probation officer then asked about Pope's behavior when he first entered the living room, to which Pope responded, "I don't know what you're talking about." When asked what was in the storage cube, Pope replied, "nothing." The probation officer then asked him "if he would open the top" of the storage cube. Pope "opened it just a little bit and closed it." The probation officer then asked, "Will you take the top off, so I can see in it?" Pope removed the top, revealing a gaming controller and about four video games for a PlayStation 4.

Because a PlayStation 4 gaming console is capable of connecting to the Internet and was not permitted under the terms of Pope's supervised release, the probation officer wondered why Pope would have a controller and multiple PlayStation 4 games in his possession. The officer asked Pope whether he was trying to hide something; Pope answered that he thought the games and the controller belonged to his niece and nephew and that they had been there since before his release from prison. The probation officer then photographed each of the games and, upon checking their release dates, discovered that at least one of the games had been released after Pope's term of imprisonment.

The officer reported the incident to his supervisor and his special offender specialist. Pope was due for his six-month Computer Voice Stress Analysis (CVSA) exam in January, so the officers decided to postpone a search and instead use the exam to inquire about Pope's possession

3

of Internet-capable devices. If Pope failed his exam, a search team, including some members from outside Bowling Green, would be waiting "on standby." The probation officer testified that, although he believed he had reasonable suspicion to search Pope's house after the home visit, waiting until after the CVSA exam would provide "more than enough reasonable suspicion" to conduct such a search.

On January 30, 2018, Pope took the CVSA exam. The administering officer, along with other certified examiners and the computer program's own algorithm, found that Pope had been "deceptive" when he responded "no" to whether he had viewed child pornography or accessed the Internet through an unauthorized device or gaming device since his last exam.

After Pope failed the exam, officers immediately began searches of his vehicle and residence. Officers found a cell phone in Pope's car outside the probation office. Pope said the phone belonged to his mother but that he had it to use the Internet. Meanwhile, the rest of the search team, which had been waiting on standby during the exam, gathered at Pope's home, where they found multiple Internet-capable devices stowed between the mattress and box springs of Pope's bed. Those devices were not registered with or being monitored by the probation office, and a forensic search later revealed that at least two of them contained child pornography.

On the same day as the searches, Pope's probation officer prepared a violation report and petition for warrant on supervised release, relying on the failed CVSA exam and the devices found during the searches as evidence of Pope's violations of his supervised-release conditions.

A grand jury charged Pope with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(b)(2). Pope filed a motion to suppress evidence stemming from the warrantless searches of his car and home, and the government filed a response arguing that the officers had reasonable suspicion to conduct the searches, largely based on the CVSA exam results.

The district court referred the motion to suppress to a magistrate judge. After a suppression hearing, the magistrate judge recommended denying Pope's motion to suppress based on the supervised-release condition requiring him to submit to CVSA testing. The district court adopted the report and recommendation and denied the motion to suppress. *United States v. Pope*, No. 1:18-CR-00017-GNS-HBB, 2019 WL 5068663, at *1 (W.D. Ky. Oct. 9, 2019). The district court agreed with the magistrate judge that Pope "essentially waived th[e] challenge" that CVSA exam results cannot provide reasonable suspicion for a search because he failed to object to the CVSA-exam condition in his supervised release terms. *Id.* at *2. It also held, in the alternative, that the December 13, 2017 home visit provided reasonable suspicion for the search of Pope's home—but not of his car—even without the CVSA result. *Id.* at *2–4, *4 n.3.

Pope then pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(b)(2), reserving the right to appeal the denial of his motion to suppress. He was sentenced to the statutory mandatory minimum, 120 months' imprisonment, to be followed by a lifetime of supervised release.

Pope's probation officer later updated the violation report and petition for warrant on supervised release after Pope pleaded guilty to possession of child pornography. Pope stipulated to the violations described in the petition. The district court revoked Pope's prior life term of supervised release and ordered that he be imprisoned for a term of 10 months, followed by a new life term of supervised release, to run concurrently with his sentence for his second conviction.

Pope now appeals his conviction for possession of child pornography and the revocation of his supervised release, challenging only the denial of his motion to suppress.

II.

On an appeal from a denial of a motion to suppress, we review de novo a district court's legal determinations and consider its factual findings for clear error. *United States v. Fletcher*, 978 F.3d 1009, 1014 (6th Cir. 2020). Whether a search was supported by reasonable suspicion "is a mixed question of law and fact that we review de novo." *United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015).

III.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, officers must obtain a judicial warrant to conduct a reasonable search. *Riley v. California*, 573 U.S. 373, 382 (2015) (citation omitted). But the Fourth Amendment's requirements are often more easily satisfied in the context of searching a probationer's person or property. *Fletcher*, 978 F.3d at 1015; *United States v. Budzynski*, 981 F.3d 499, 504 (2020). And "those on supervised release have an even further reduced expectation of privacy because supervised release 'is a more severe punishment than parole and probation.'" *Fletcher*, 978 F.3d at 1019 (quoting *United States v. Sulik*, 807 F. App'x 489, 493 (6th Cir. 2020)); *see also United States v. Reyes*, 283 F.3d 446, 461–62 (2d Cir. 2002) (explaining that Fourth Amendment principles in the parole and probation context also apply to supervised releasees).

Here, a condition of Pope's supervised release provided that reasonable suspicion would provide sufficient grounds to conduct a search. A releasee's supervised-release conditions may authorize a search based on suspicion of nothing more than a violation of the conditions themselves and need not be based on a violation of a generally applicable criminal statute. *See United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007) (explaining that "a probationer's violation of the

terms of probation is comparable to his violation of a criminal statute"). Neither Pope nor the government contests that reasonable suspicion is the relevant standard here. Furthermore, under the totality-of-the-circumstances balancing prescribed by *United States v. Knights*, an officer needs only reasonable suspicion to search a probationer's house, particularly where the terms of release include a search condition requiring only reasonable suspicion, and a person on supervised release has no greater privacy interest than a probationer. 534 U.S. 112, 118, 121 (2001); *Herndon*, 501 F.3d at 691; *see Fletcher*, 978 F.3d at 1019. So no more than reasonable suspicion is required here.

A. THE CVSA CONDITION

Pope argues that the CVSA results provided the key basis for searching Pope's home and car and that because those results were unreliable, they could not provide reasonable suspicion. Pope also contests the district court's holding that he waived his challenge to the CVSA exam's reliability by failing to object to the condition when it was imposed. He argues not only that, if valid, the CVSA condition did not provide that a CVSA exam could provide reasonable suspicion or any other basis to search, but also that the CVSA condition itself is invalid because it was imposed while he was in prison and, therefore, unable to object in court with the help of counsel. Finally, Pope argues that the CVSA condition is vague. In response, the government says that the CVSA exam served merely as "a supervisory tool" that was "not necessary to the reasonable-suspicion calculus." We need not address Pope's arguments concerning the validity and scope of the CVSA condition nor his arguments regarding the reliability of the CVSA exam results because we affirm on the district court's alternative holding that the home visit on December 13 provided reasonable suspicion to conduct the search of Pope's home.

B. SEARCH OF THE HOME

Pope argues that the evidence gleaned from the December 13 home visit cannot provide sufficient support for reasonable suspicion, and even if it could, that evidence was stale by the time of the search around six weeks later. We disagree.

To determine whether the officers had reasonable suspicion to search Pope's home and car, we examine "the totality of the circumstances . . . to see whether [his probation officer] ha[d] a particularized and objective basis for suspecting legal wrongdoing." *Herndon*, 501 F.3d at 691 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Reasonable suspicion requires more than an "inarticulate hunch," *Terry v. Ohio*, 392 U.S. 1, 22 (1968), but less evidence than what is necessary for either a probable-cause or preponderance-of-the-evidence standard, *Herndon*, 501 F.3d at 691. The possibility of an innocent explanation for a supervised releasee's conduct does not undermine the government's ability to meet such a low bar. *United States v. Belakhdhar*, 924 F.3d 925, 928 (6th Cir. 2019).

Here, the totality of circumstances easily provided officers the reasonable suspicion necessary to search Pope's home. Pope's persistent requests for Internet access, the sudden gap in usage of his authorized computer, the email likely sent from a smartphone, and the GameStop purchase on his bank statement formed the backdrop for the home visit on December 13, 2017. Indeed, we have held that a probationer's mere "mention of Internet usage in the pursuit of employment," even where a probation officer "could have elicited further clarifying information" to alleviate the suspicion but did not do so, provided reasonable suspicion to conduct a search. *Herndon*, 501 F.3d at 692.

And the home visit itself provided sufficient evidence to prompt the probation officer to reasonably suspect that Pope had violated the terms of his supervised release. Pope's running into

the living room, wet and wearing only unbuttoned jeans, to quickly put video games and a gaming controller out of sight upon his probation officer's arrival suggested that Pope was eager to hide something from him. The probation officer testified that Pope appeared "kind of excited" during the walk-through of the home. Moreover, when the officer inquired about Pope's peculiar behavior, Pope feigned ignorance. Nervousness and "elusive behavior," at least when accompanied by other evidence, tend to support a finding of reasonable suspicion. *United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016).

Upon discovering the game controller and the video games in the storage cube, it was reasonable for Pope's probation officer to infer that Pope had some unauthorized means of accessing the Internet in order to use the game controller and games. Thus, Pope's point that his probation officer did not find an Internet-capable device at that time is inapposite—the officer needed only articulable facts supporting reasonable suspicion of a violation, not direct evidence of the violation itself. *See Northrop v. Trippett*, 265 F.3d 372, 381 (6th Cir. 2001). And his contention that the controller and games could have remained after the removal of the PlayStation 4 console or that they could have belonged to other household members is belied not only by his apparent zeal to hide the controller and games, but also by the fact that at least one of the games had been released after Pope left prison, contradicting Pope's attempted explanation. Moreover, the possible existence of an innocent explanation for Pope's unusual behavior and the presence of the video games and controller cannot prevent the government from meeting its light burden in the reasonable-suspicion context. *See Belakhdhar*, 924 F.3d at 928.

Pope asserts that we should not consider the home visit as part of the reasonable-suspicion analysis because the CVSA exam results really precipitated the search. He points to the fact that the game controller and games were not mentioned in the Petition for Warrant on Probation and

Supervised Release of January 30, 2018. That argument is meritless. First, the officer's explanation in the petition was not an affidavit in support of a warrant to search, but rather a post hoc description of the events leading to the search to explain the basis for the requested revocation. Second, reasonable suspicion here is based on what a reasonable officer could rely on, rather than the officers' subjective motivations. *See Knights*, 534 U.S. at 122 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Pope next argues that even if the home visit provided enough evidence for reasonable suspicion, that evidence was stale at the time of the search six weeks later. We typically inquire into the staleness of evidence when determining whether a warrant is supported by probable cause. *See United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). In that context and without relying on an "arbitrary time limitation," *United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001) (quotation omitted), we examine four factors to determine whether there exist "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*," *Hython*, 443 F.3d at 485 (quoting *Sgro v. United States*, 187 U.S. 206, 210 (1932)). Those factors can be used in the reasonable-suspicion context. *See, e.g.*, *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) (analyzing whether evidence was stale for the purpose of reasonable suspicion); *United States v. Payne*, 181 F.3d 781, 790 (6th Cir. 1999) (same).

First, we consider the character of the crime—in particular, whether it is "fleeting" or continuous. *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). Pope asserts that the relevant crime here is no crime at all because the possession of a gaming controller and video games neither is a crime nor suggests involvement in a crime. But the violation of a supervised-release condition—here, suspected use of an Internet-capable device—is "comparable to [a] violation of a criminal statute." *Herndon*, 501 F.3d at 689 (stating so in the probation context).

And Pope's continued requests for Internet access, the bank account statement, the possible smartphone email, and the gap in his Internet usage on an authorized device suggest that his use of unauthorized Internet-capable devices was ongoing.

Second, we ask whether the suspected criminal is "nomadic or entrenched." *Frechette*, 583 F.3d at 378 (quotation omitted). Pope lived in the same home during the six weeks between the home visit and the search—the fact that his mother also lived there does not affect the analysis. Furthermore, under his supervised-release conditions, he could not move without his probation officer's approval.

Third, we look to whether the "thing to be seized" is "perishable and easily transferrable or of enduring utility to its holder." *Id.* at 378 (quotation omitted). Unlike drugs, an Internet-capable device is not easily consumable or perishable, but rather has "enduring" value to its owner. *See id.*

Fourth and finally, we consider the nature of the "place to be searched." *Id.* at 378 (quotation omitted). We have held that a suspect's residence is a "secure operational base" rather than a "mere criminal forum of convenience" in the context of child pornography. *United States v. Elbe*, 774 F.3d 885, 890–91 (6th Cir. 2014). So too here. Even if the relevant crime here is the violation of supervised-release conditions, Pope's home would not be a place of "mere . . . convenience" for his use of Internet-capable devices, but rather exactly where he would be most likely and best situated to use such devices. *Id.* at 890.

Based on the foregoing factors, we hold that the evidence from the home visit was not stale at the time of the search. Thus, the officers' search of Pope's home was supported by reasonable suspicion.

Because the factual basis for Pope's plea agreement relied only on the devices found in Pope's home, we affirm Pope's conviction solely on the basis that reasonable suspicion supported the home search.[1]

## IV.

Pope also appeals the district court's order revoking his supervised release. But he makes no independent arguments regarding the revocation order, stating only that the revocation order must also be vacated if we determine that the district court should have granted his motion to suppress. Because we see no error in the district court's denial of his motion to suppress as to the search of Pope's home, we affirm the district court's order revoking his supervised release.

## V.

Accordingly, we affirm Pope's conviction and the district court's order revoking his term of supervised release.

---

[1] The district court held that the reasonable suspicion stemming from the December 13 home visit supported only the search of Pope's home, not his car. *Pope*, 2019 WL 5068663, at \*4 n.3 ("This rationale cannot apply to the search of Pope's car, however, because discovery of the PS4 games and controller in the home would not suggest that Pope had an unauthorized device in his car."). As previously noted, the government does not argue that the CVSA exam results contributed to the reasonable suspicion underlying the searches, but instead argues that the CVSA exam was simply a supervision tool. Because the government does not contest Pope's argument that the CVSA exam results did not provide reasonable suspicion for the car search, the government does not defend the district court's ruling that upheld the car search on the CVSA ground. Also, the government has not challenged on this appeal the district court's ruling that the December 13 home visit did not justify the car search. The government therefore has not argued that reasonable suspicion existed for the car search. But, as discussed, Pope's conviction did not depend on any evidence obtained from the car search.

12